**NME HOSPITALS, INC., d/b/a Kirksville Osteopathic Medical Center, Appellant,**

v.

**DEPARTMENT OF SOCIAL SERVICES, DIVISION OF MEDICAL SERVICES, Respondent.**

**No. 75042.**

Supreme Court of Missouri, En Banc.

March 23, 1993.

Reconsideration and Re-examination Denied April 20, 1993.

---

Harvey M. Tettlebaum, Jefferson City, Mark G. Arnold, St. Louis, for appellant.

William E. Cornwell, Karolin Solorzano, Dept. of Social Services, Jefferson City, for respondent.

Lori J. Levine, Michael Modsen, Gerald M. Sill, Jefferson City, for amicus curiae Mo. Hosp. Assn.

Mary Winter, Richard S. Brownlee III, Jefferson City, for amicus curiae Mo. Med. Assn.

COVINGTON, Judge.

The appellant NME Hospitals, Inc., d/b/a Kirksville Osteopathic Medical Center (KOMC), filed a complaint with the Administrative Hearing Commission (AHC) seeking a determination on a decision of

the Department of Social Services denying a rate adjustment for services provided under the Medicaid program. The AHC determined that the Department had correctly set the rate. The circuit court affirmed the decision of the AHC. The Missouri Court of Appeals, Western District, affirmed. This Court granted transfer to decide the question of whether an agency may avoid its rulemaking responsibilities by amending a contract. Affirmed in part; reversed in part.

### I.

NME Hospitals, Inc. operates the Kirksville Osteopathic Medical Center. KOMC and the Department entered into an agreement whereby the Department pays KOMC to provide services to Medicaid recipients. KOMC operates a unit known as Laughlin Pavilion which provides psychiatric and chemical dependency treatment to Medicaid recipients.

KOMC is certified to participate in the Medicaid program. It is authorized under § 208.153, RSMo Supp.1992, to provide services for which benefits are authorized under § 208.152, RSMo Supp.1992. KOMC has a valid participation agreement with the State of Missouri to provide services to Medicaid recipients under the federal Medicaid program pursuant to § 198.045, RSMo 1986, and applicable regulations. KOMC is a "disproportionate share" hospital, a hospital having a ratio of unpaid days of care above a designated percentage. Disproportionate share hospitals are reimbursed differently from other hospitals so as to provide those hospitals having a high number of nonpaid days of care the benefit of having all of their days paid.

The Department of Social Services notified KOMC by letter that effective July 1, 1989, the facility's first tier disproportionate share rate under Medicaid would be adjusted to $267.48 per day. The maximum rate that the Department would pay for inpatient psychiatric services was $277.00 per day. The rate calculated for KOMC by the Department disallowed, among other costs, psychiatric costs of $183,301. The psychiatric costs were disallowed on the basis of Missouri Medicaid Bulletin, Vol. 10, No. 1, dated July 21, 1987, which stated that the Department would not reimburse providers for any psychiatric service other than electric shock treatment. Medicaid bulletins are amendments to the Medicaid Manual, which informs providers of what services are covered under the Medicaid program. If the disallowed psychiatric costs had been included in the rate, the rate would have increased by $12.48 per patient day.

To compute the Medicaid reimbursement rate for KOMC, the Department used "paid days" rather than "billed days." A provider reports to the Department how many patient days of care it believes to be reimbursable through Medicaid. These are called "billed days." The Department pays the provider for some or all of the billed days. The billed days for which the Department allows payment are called "paid days." The "paid days" are calculated by a formula based upon the Professional Activity Study. The Study determines the average length of stay for all hospitals based upon a certain diagnosis code and other related information. A paid day ratio is derived from the statistics of the days the hospital billed but were not paid and the days the hospital billed and were paid. A hospital with a paid day ratio of eighty-five percent or below is considered to be a first tier disproportionate share hospital. In calculating KOMC's federal minimum payment and total estimated general payments, the Department used the hospital's paid days instead of its billed days. If billed days had been used, KOMC's rate would have been greater by $55.77 per patient day.

The AHC determined that psychiatric services other than electric shock treatment were to be excluded from KOMC's rate calculation. The AHC also determined that the Department correctly used paid rather than billed days in its rate calculation. KOMC appealed from both determinations.

### II.

■ KOMC asserts that the AHC erred in deciding that psychiatric services other

than electric shock treatment were not reimbursable by the Department. This Court agrees. Changes in statewide policy are rules. Failure to follow rulemaking procedures renders void purported changes in statewide policy. A purported change in statewide policy that does not comply with rulemaking procedures is not enforceable by contract.

### A.

■ There is no dispute that the disallowance of costs of psychiatric services other than electric shock therapy is a reimbursement standard of general applicability. As such, the standard is a policy change requiring promulgation of a rule. Section 536.010(4), RSMo 1986, provides, in pertinent part, that the term "rule" means "each agency statement of general applicability that implements, interprets, or prescribes law or policy...." An agency standard is a "rule" if it announces "[a]n agency statement of policy or interpretation of law of future effect which acts on unnamed and unspecified facts...." *Missourians for Separation of Church and State v. Robertson,* 592 S.W.2d 825, 841 (Mo.App.1979).

■ The Department suggests that the policy change at issue is not one of general applicability because it governs only Medicaid participants, rather than all hospitals in Missouri; therefore, the Department contends, promulgation of a rule is not required. The Department is incorrect. The reimbursement policy applies generally to all participants in the Medicaid program. Definition of the reasonable costs, manner, extent, quantity, quality, charges and fees of medical assistance under the program must be made by rule and regulation. § 208.153.1. The Department's decision to exclude coverage for all psychiatric or psychological services other than electric shock therapy defines in part medical assistance within the meaning of § 208.153. As such, the Department's amendment required promulgation of a rule. § 536.-010(4).

### B.

Promulgation of a rule requires compliance with the rulemaking procedures specified in § 536.021, RSMo Supp.1992. Section 536.021 provides in pertinent part:

1. No rule shall hereafter be made, amended or rescinded by any state agency unless such agency shall first file with the secretary of state a notice of proposed rulemaking and a subsequent order of rulemaking....

....

6. [A]ny rule, or amendment or rescission thereof, made after January 1, 1976, shall be void unless made in accordance with the provisions of this section.

■ Section 536.021 sets forth the notice and comment procedures for rulemaking, amending, and rescinding. The purpose of the notice and comment procedures is to provide information to the agency through statements of those in support of or in opposition to the proposed rule. In *St. Louis Christian Home v. Missouri Comm'n on Human Rights,* 634 S.W.2d 508, 515 (Mo.App.1982), the court observed:

The very purpose of the notice procedure for a proposed rule is to allow opportunity for comment by supporters or opponents of the measure, and so to induce a modification.... To neglect the notice ... or to give effect to a *proposed* rule before the time for comment has run ... undermines the integrity of the procedure.

(emphasis in original).

■ A rule adopted in violation of § 536.021 is void. § 536.021.6; *St. Louis Christian Home,* 634 S.W.2d at 514–15; *See also Sunset Retirement Homes, Inc. v. Dep't of Social Services,* 830 S.W.2d 18, 21 (Mo.App.1992); *Missouri State Div. of Family Services v. Barclay,* 705 S.W.2d 518, 521 (Mo.App.1985). There is no dispute that the Department failed to comply with rulemaking procedures in enacting the amendment that is the subject of the dispute in the present case. The amendment is void.

## C.

The AHC correctly acknowledged that it could not give effect to the amendment as a rule. The AHC agreed, however, with the Department's contention that the amendment was nonetheless effective as a valid contractual provision.

The determination of the AHC ignores § 208.153.1, which requires that the Department define covered services by rule and regulation: "[T]he division of medical services shall by rule and regulation define the reasonable costs, manner, extent, quantity, quality, charges and fees of medical assistance herein provided." The change in statewide policy required a rule. The Department failed to comply with the rulemaking procedure in setting the standard for reimbursement; therefore, the amendment cannot be given effect as a rule.

If the amendment cannot be given effect as a rule, it cannot be given effect as a valid term of a contract. The word "void" "means that which has no force and effect, is without legal efficacy, is incapable of being enforced by law, or has no legal or binding force...." Black's Law Dictionary 1573 (6th ed. 1990).

Although no Missouri court has directly addressed the issue, courts in other states have uniformly held that state agencies may not evade rulemaking by contract. In *Senn Park Nursing Center v. Miller*, 104 Ill.2d 169, 83 Ill.Dec. 609, 470 N.E.2d 1029 (1984), the State changed the method by which it calculated increases in Medicaid rates as a consequence of inflation. The State defended the change on the theory that the AHC adopted—that service providers had by contract agreed to accept an otherwise void rule. The Illinois Supreme Court disagreed, holding that the signer of a contract would necessarily read into the contract that any changes in the reimbursement practices would be characterized as rules and as such must first comply with the procedures for adoption of such rules under the equivalent of Missouri's Administrative Procedure Act. *Id.* 83 Ill.Dec. at 615, 470 N.E.2d at 1035.

The provisions of the Illinois statutes upon which the *Senn Park* court relied are barely distinguishable from the Missouri statutes governing rulemaking. Section 208.153.1 requires the Department to define covered service by "rule and regulation." Section 536.021 specifies the procedures for enacting a valid "rule." KOMC's service provider agreement speaks of rules and regulations. KOMC had a legitimate expectation that the Department would follow the Administrative Procedure Act in implementing statewide changes in the Medicaid program. Accord, *Petition of Paterson Counseling Center, Inc.*, 237 N.J.Super 240, 567 A.2d 282, 286 (App.Div. 1989); *Massachusetts General Hosp. v. Commissioner of Public Welfare*, 346 Mass. 739, 196 N.E.2d 181, 182 (1964).

■ In summary, changes in statewide policy are rules within the meaning of the Administrative Procedure Act. Failure to comply with the rulemaking procedures renders the purported rule void. If an amendment cannot be given effect as a rule, it cannot be given effect as a valid term of a contract. The decision of the AHC determining that the costs for psychiatric services other than electric shock treatments submitted by KOMC were not reimbursable is reversed.

## III.

KOMC argues that the use by the Department of paid days rather than billed days to compute the Medicaid reimbursement rate for a disproportionate share hospital is contrary to its own regulations. KOMC does not carry its burden in this respect.

■ Regulation 13 CSR 70–15.010 (1989) sets forth the principles for reimbursement of covered inpatient hospital services in hospitals such as KOMC. Regulation 13 CSR 70–15.010(1) provides: "Unless otherwise limited by regulation, reimbursement will be based solely on the individual recipient's days of care (within benefit limitations) multiplied by the individual hospital's Title XIX per-diem rate." Regulation 13 CSR 70–15.010(6)(H)(3) then provides that as to a disproportionate share hospital, "[t]he federal minimum payment amount

for the facility will be determined as the product of the federal minimum payment per-diem rate ... times the allowable days for claim payment per program benefit limitations as determined by the Division of Medical Services." Among the "benefit limitations," the Department cites to its regulation 13 CSR 70–15.030 (1988). Section (2) of that regulation provides, "... the number of days which Medicaid will cover for each admission and continuous period of hospitalization shall be limited to the lowest of subsection (2)(A), (B), or (C)." Subsection (2)(A) refers to average lengths-of-hospital stay schedules. Subsection (2)(B) refers to medically necessary days. Subsection (C) refers to billed days. The Department applied subsection (2)(A).

KOMC contends that only the billed day limitation of subsection (2)(C) applies to it. KOMC concedes that it has the burden of proving its case, but in support of its case it simply asserted before the AHC that subsections (2)(A) and (2)(B) do not apply to it. The AHC found that KOMC failed to show that its billed days are the least of the three options. KOMC failed to prove its case. The AHC's determination that billed days should not be used in setting KOMC's rate is affirmed.

### IV.

The judgment is affirmed in part and reversed in part. Cause remanded to the circuit court with directions to enter a decision in favor of KOMC on the issue of reimbursement for psychiatric services.

All concur.