STATE ex rel. ATMOS ENERGY
CORPORATION, et al.,
Appellants,

v.

PUBLIC SERVICE COMMISSION
OF THE STATE of Missouri,
et al., Respondents.

and

Ameren Corporation and Union
Electric Company, d/b/a
AmerenUE, Appellants,

v.

Public Service Commission of the State
of Missouri, et al., Respondents.

No. SC 84344.

Supreme Court of Missouri,
En Banc.

April 22, 2003.

Rehearing Denied May 27, 2003.

Robert J. Hack, Kansas City, James M. Fischer, Jefferson City, Jeffrey A. Keevil, Columbia, Michael C. Pendergast, St. Louis, Gary W. Duffy, Jefferson City, Joseph H. Raybuck, Thomas M. Byrne, St. Louis, James B. Lowery, Phebe La Mar, Columbia, for Appellants.

Lera L. Shemwell, Dana K. Joyce, Douglas E. Micheel, Office of Public Counsel, Jefferson City, for Respondents.

STEPHEN N. LIMBAUGH, JR., Chief Justice.

Atmos Energy Corporation (Atmos); Missouri Gas Energy (MGE); Laclede Gas Company (Laclede); Trigen–Kansas City Energy Corporation (Trigen); Ameren Corporation (Ameren); and Union Electric Company (UE), d/b/a AmerenUE, appeal the judgment of the Circuit Court of Cole County affirming the final orders of rulemaking of the Missouri Public Service Commission (PSC), promulgating several rules that regulate transactions between certain public utilities and their affiliates. Appellants contest the validity of the rules by challenging the authority of the PSC to promulgate them and the procedure by which they were promulgated, claiming generally that as affected entities they were unlawfully denied contested case procedures before the PSC in voicing their objections to the promulgation of the rules. After appeal to the Court of Appeals, Western District, this Court granted transfer. Mo. Const. art. V, sec. 10. The judgment is affirmed.

I.

The PSC is a state agency established by the Missouri General Assembly to regulate public utilities operating within the state. Appellants Atmos, MGE, and Laclede are gas corporations and public utilities, as defined in sections 386.020(18) and 386.020(42),[1] subject to regulation by the PSC. Trigen is a steam distribution company operating as a retail distributor of steam in Jackson County, Missouri, and subject to PSC regulation as a "heating company," pursuant to section 386.020(20). UE is an electric and gas utility, which

---

1. All Missouri statutory references are to RSMo 2000 unless otherwise indicated.

qualifies as an electrical corporation under section 386.020(15) and a gas corporation under section 386.020(18), and is subject to regulation by the PSC as a regulated investor-owned utility company. Ameren, the unregulated parent corporation of UE, is not an electrical or gas corporation and, therefore, is not directly subject to the jurisdiction of the PSC.

On April 26, 1999, the PSC, citing sections 386.250 and 393.140 as authority, filed proposed rules 4 CSR 240–20.015, 4 CSR 240–80.015, 4 CSR 240–40.015, and 4 CSR 240–40.016 with the Missouri Secretary of State. The proposed rules, applicable to electric utilities, steam heating utilities, and gas utilities, establish "asymmetrical pricing standards" that prohibit certain transactions between public utilities and their affiliates.

As required under sections 386.250(6) and 536.021, the proposed rules were then published in the Missouri Register, 24 Mo. Reg. 1346–64, and thereafter the PSC commenced separate cases for each of the proposed rules. The notice of proposed rulemaking for each of the proposed rules invited interested persons to submit written comments to the PSC and declared that a public hearing would be held at which interested persons could appear. Prior to the hearing, several utilities filed complaints with the PSC objecting to the manner in which the proceedings were being conducted. Specifically, the utilities contended that because of the "complexity and importance of the issues," the PSC should provide contested case procedures and allow the utilities to cross-examine and rebut opposing witnesses. The PSC denied the requests to provide contested case procedures, but reiterated that comments could be submitted.

After consolidating all four cases, the PSC held a three-day public hearing on September 13–15, 1999. At the hearing, the PSC considered appellants' extensive written comments opposing certain provisions of the proposed rules and allowed several representatives of the appellant utilities to orally present their arguments in opposition. In addition, witnesses were called, including representatives of the appellant utilities, who testified under oath, but only members of the PSC and the administrative law judge were permitted to examine the witnesses. Although each of the utilities participated at the hearing in varying degrees, they again objected to the proceedings on the ground that full contested case procedures should have been employed.

Following the hearing, the PSC issued "Orders of Rulemaking" in each of the cases, enacting the rules that are the subject of this appeal. Thereafter, the PSC denied timely-filed requests for rehearing in all four cases, and the appellant utilities, pursuant to section 386.510, then filed a petition for writ of review in the Circuit Court of Cole County. In the petition, appellants challenged the PSC's authority to promulgate the rules and the procedure by which they were promulgated. After hearing and argument, the Circuit Court granted judgment in favor of the PSC.

II.

■ There is some question about this Court's jurisdiction to hear the rulemaking challenge. Appellants correctly assert that appellate jurisdiction can be based on section 386.540.1, which provides, in pertinent part:

The commission and any party, including the public counsel, who has participated in the commission proceeding which produced the order or decision may, after the entry of judgment in the circuit court in any action in review, prosecute an appeal to a court having appellate jurisdiction in this state. Such

appeal shall be prosecuted as appeals from judgment of the circuit court in civil cases. . . .

However, that section is applicable only if it is first determined that jurisdiction was proper in the circuit court. *See Sumnicht v. Sackman,* 968 S.W.2d 171, 174 (Mo.App. 1998) ("A judgment entered in excess of or beyond the jurisdiction of the trial court is void and an appellate court has no jurisdiction to review on the merits.") (citation omitted); *Two Pershing Square, L.P. v. Boley,* 981 S.W.2d 635, 639 (Mo.App.1998); *Peters v. United Consumers Club,* 786 S.W.2d 192, 193 (Mo.App.1990).

■ The circuit court's jurisdiction derives from sections 386.500 and 386.510, which provide that an applicant may seek review in the circuit court of a PSC "order or decision" if the applicant has timely filed an application for rehearing and that application has been denied. In that regard, this Court has held "that the Legislature has provided a special statutory procedure for review of an 'original order or decision' of the Commission ... and that procedure [is] provided for in ·[section] 386.510 [and] is exclusive and jurisdictional." *Union Electric Company v. Clark,* 511 S.W.2d 822, 825 (Mo.1974). Moreover, this Court determined that the agency action at issue in the case *"whether it be called a rule or an order,* is clearly within the term 'original order or decision' as used in [section] 386.510." *Id.* at 824. (Emphasis added.) The clear import of our decision in *Clark* is that, when confronted with a challenge to a rule promulgated by the PSC, a circuit court is vested with jurisdiction to review the rule if the challenging parties have complied with the rehearing procedures set forth in section 386.510. *See also State ex rel. Southwestern Bell Tel. Co. v. Pub. Serv. Comm'n,* 592 S.W.2d 184 (Mo.App.1979); *Jefferson*

*Lines Inc. v. Pub. Serv. Comm'n,* 581 S.W.2d 124 (Mo.App.1979).

Arguably, contrary to the holding of *Clark,* review of PSC orders of rulemaking should be conducted via declaratory judgment actions under the Missouri Administrative Procedure Act, section 536.050, and not chapter 386. Superficially, two statutory amendments enacted since *Clark* appear to support such a conclusion. In 1976, the term "rule" under the MAPA was amended to exclude a "determination, decision or *order* in a contested case." Section 536.010(4)(d). (Emphasis added.) And one year later, section 386.250(6) was amended to mandate that PSC rules be promulgated pursuant to the procedures set forth in chapter 536. However, with respect to the first amendment, because the term "order" explicitly refers to orders that an agency issues in a contested case, the term does not include "orders" that an agency may promulgate through rulemaking, such as are permitted in chapter 386. Further, the latter amendment to section 386.250(6) merely imposes the procedural requirements of the MAPA for the enactment of PSC rules, but does not effect a change in how the rules are to be judicially reviewed. Therefore, neither amendment, either in purpose or effect, alters the holding in *Clark* that the procedures set forth in chapter 386 govern judicial review of PSC rulemaking.

In any event, in this case, appellants complied with each step of the review procedures mandated by chapter 386. They contested the content of the proposed rules and timely filed applications for rehearing after the PSC's final orders of rulemaking, and when the applications for rehearing were denied, they timely filed petitions for writ of review in the circuit court. At that point, the circuit court had jurisdiction to hear the claims. Under section 386.540.1, this Court, in turn, is vested

with jurisdiction to hear this appeal. This Court now turns to the merits of those claims.

## III.

▮ Pursuant to section 386.510, the standard of review of a PSC order of rulemaking is two-pronged: first, the reviewing court must determine whether the PSC's order is lawful; and second, the court must determine whether the order is reasonable. However, "that standard for review is essentially the same as [our review of] cases decided by other administrative tribunals." *Love 1979 Partners, et al. v. Pub. Serv. Comm'n of Missouri,* 715 S.W.2d 482, 490 n.8 (Mo. banc 1986). As this Court held in *Love:*

> There is no presumption in favor of the Commission's resolution of legal issues. Nor is there any presumption in favor of the circuit court's determination of these issues, over and above an appellant's normal burden of demonstrating error. So we decide the legal points anew. The decision of the Commission on factual issues, however, is presumed to be correct until the contrary is shown and we are obliged to sustain the Commission's order if it is supported by substantial evidence on the record as a whole.

*Id.* at 486.

## IV.

Appellants Atmos, MGE, Laclede, and Trigen raised seven points of error in their joint brief, with appellants Ameren and UE concurring in two of these points (points I and V below). We address each point in turn.

*Point I*

Appellants contend that the PSC's promulgation of the rules failed to comply with the rulemaking procedures set out in section 386.250(6), which states, that as

"[t]o the adoption of rules ... which prescribe the conditions of rendering public utility service ... *a hearing shall be held at which affected parties may present evidence as to the reasonableness of any proposed rule* [.]" (Emphasis added.) Appellants interpret section 386.250(6) to require a "hearing" at which affected parties are entitled to certain evidentiary procedures, particularly, the opportunity to cross-examine adverse witnesses and present rebuttal evidence. Because those procedures were disallowed in this case, appellants contend that the rules are void. *See NME Hospitals, Inc. v. Dept. of Social Services,* 850 S.W.2d 71, 74 (Mo. banc 1993) (holding that rules must be promulgated in accordance with the appropriate rulemaking procedures to be valid).

▮ Section 386.250(6) does indeed govern the rules at issue in this case, because they undoubtedly "prescribe the conditions of rendering public utility service." However, section 386.250(6) does not obligate the PSC to provide evidentiary procedures at the hearing other than that which the statute plainly requires—the opportunity to "present evidence." Moreover, the specific evidentiary procedures sought by utilities—cross-examination of witnesses and the presentation of rebuttal evidence—are procedures normally employed under the MAPA in contested cases but not rulemaking hearings. *Hagely v. Board of Educ. of Webster Groves School Dist.,* 841 S.W.2d 663, 668 (Mo. banc 1992). This is a crucial point, as Professor Alfred Neely explained:

> That [rulemaking] statutes require a "hearing" does not mean that the hearing must take the form of an adjudicatory, trial-type hearing in the nature of that in a contested case. In the absence of a clear indication of legislative intent that more is required, the presence of the mandate for hearing in a rulemaking context means only that the agency can-

not promulgate the rule on the basis of an invitation for written comments on its proposal. *[The agency] must meet interested members of the public face to face with an opportunity for oral presentation and comment, but the legislative quality of rulemaking assures that nothing more is expected than a legislative-style hearing . . . .*

ALFRED S. NEELY, MISSOURI PRACTICE: ADMINISTRATIVE PRACTICE AND PROCEDURE section 6.39, at 192 (3d ed. 2001). (Emphasis added.)

Though appellants concede that in this case the PSC engaged in rulemaking, not adjudication, they still contend that the section 386.250(6) requirement that they be allowed to "present evidence" at the hearing necessarily encompasses the corollary procedures of cross-examination and presentation of rebuttal evidence. This Court disagrees. Section 386.250(6) requires exactly what it says: "[A] hearing . . . at which affected parties may present evidence as to the reasonableness of any proposed rule." Nothing more and nothing less is required. Thus, in view of the evidentiary procedures provided at the three-day hearing, the PSC fully complied with the requirements of section 386.250(6).

*Point II*

Appellants next contend that the PSC failed to comply with the publication requirements of chapter 536 because the published notices of proposed rulemaking (1) did not provide sufficient explanations of the proposed rules and (2) did not include concise summaries of the PSC's findings with respect to the merits of the testimony or comments received in opposition to the rules.

■ On the first point, section 536.021.2(1) states that a notice of proposed rulemaking shall contain "[a]n explanation of any proposed rule or any change

in an existing rule, and the reasons therefor[.]" The purpose of the notice procedure is to briefly explain the "general subject matters covered by the [proposed] rules," *City of Springfield v. Pub. Serv. Comm'n*, 812 S.W.2d 827, 832 (Mo.App. 1991) (*overruled on other grounds by Missouri Mun. League v. State*, 932 S.W.2d 400, 403 (Mo. banc 1996)), and " 'allow opportunity for comment by supporters or opponents of the measure . . . ,' " *NME*, 850 S.W.2d at 74. Here, it is undisputed that the notices of proposed rulemaking both explained the general subject matter of the proposed rules and gave notice of the means and manner by which the public could comment on the proposed rules. Nonetheless, appellants argue that the notices were insufficient because they failed to explain why the PSC chose to act through rulemaking rather than some alternative agency method. However, this argument is wholly without merit, as section 536.021.2(1) imposes no such obligation on an agency.

■ With respect to appellants' second argument, section 536.021.6(4) requires a final order of rulemaking to contain:

A brief summary of the general nature and extent of comments submitted in support of or in opposition to the proposed rule and a concise summary of the testimony presented at the hearing, if any, held in connection with said rulemaking, together with a concise summary of the state agency's findings with respect to the merits of any such testimony or comments which are opposed in whole or in part to the proposed rule[.]

In its final orders of rulemaking, the PSC carefully summarized every favorable and unfavorable statement it received during the written comment process and the three-day public hearings. For each statement received, the PSC gave an extensive

response explaining why it had chosen to reject the suggestion or to incorporate only some part of the suggestion. Under these circumstances, there is no merit in appellants' assertion that the PSC failed to comply with section 536.021.6(4) in issuing the final orders of rulemaking.

*Point III*

■ Appellant Trigen argues that the new PSC rule affecting steam heating utilities, 4 CSR 240–80.015, is void because neither the published notice of proposed rulemaking nor the published final order of rulemaking cited the appropriate "legal authority upon which the proposed rule [was] based," as required under section 536.021.2(2). Though in both publications the PSC cited sections 386.250 and 393.140 as the statutes that vested it with authority to promulgate the steam heating rule, Trigen correctly points out that neither statute cited mentions "steam heating companies," but instead refers only to the PSC's jurisdiction over companies providing gas, water, electricity, and sewer services. However, appellant fails to take into account section 393.290, aptly titled "Powers of [the Public Service] Commission relating to other utilities made applicable to heating companies," which states:

All provisions of chapters 386, 387, 390, 392 and 393, RSMo, in reference to ... gas corporations, electrical corporations, water corporations ... and sewer corporations, in reference to ... the fixing of just and reasonable rates and adequacy of service, ... excessive charges for product, service or facilities, proceedings before the [PSC], ... and in all other sections, paragraphs, provisions and parts of chapters 386, 387, 390, 392 and 393, RSMo, in reference to any other corporations subject to any of the provisions of chapters 386, 387, 390, 392 and 393, RSMo, so far as the same shall be practically, legally or necessarily ap-

plicable to heating companies in this state, are hereby made applicable to such heating companies as designated in said chapters, and shall have full application thereto.

Thus, under the express language of section 393.290, when the PSC properly invokes its jurisdiction under chapters 386 and 393, it also is authorized to act with respect to heating companies. Despite the fact that sections 386.250 and 393.140 do not reference heating companies, the PSC's citation to those sections as its authority for promulgation of the rules did not violate section 536.021.2(2).

*Point IV*

Appellants also contend that the PSC acted unlawfully in adopting the rules by failing to comply with the provisions of section 536.016, which, the parties agree, became effective on August 28, 1999, more than two months after the notices of the proposed rules were published in the Missouri Register. Section 536.016 provides:

1. Any state agency *shall propose rules* based upon substantial evidence on the record and a finding by the agency that the rule is necessary to carry out the purposes of the statute that granted such rulemaking authority. (Emphasis added.)

2. Each state agency shall adopt procedures by which it will determine whether a rule is necessary to carry out the purposes of the statute authorizing the rule. Such criteria and rulemaking shall be based upon reasonably available empirical data and shall include an assessment of the effectiveness and the cost of rules both to the state and to any private or public person or entity affected by such rules.

■ Respondents counter that section 536.016 cannot be applied to the promulgation of the rules because the statute

does not govern the entire rulemaking process but only the proposal of rules, which, in this case, the PSC had completed prior to the statute's effective date. A plain reading of the statute supports that interpretation. Subsection 1 of the statute clearly imposes an obligation on an agency to "*propose*" rules that are based on "substantial evidence" and are "necessary to carry out the purposes of the statute granting such rulemaking authority." Subsection 2, then, elaborates upon the requirements set out in subsection 1 and states that the agency's determination—that the rule proposed is necessary to carry out the purposes of the enabling statute—must be supported by empirical data and include a cost-benefit analysis.

Because section 536.016 applies solely to an agency's proposal of rules, and because the PSC proposed the rules prior to the statute's effective date, the statute is relevant only if it has retrospective application. We hold that it does not. As far back as 1909 this Court held that, "If, before final decision, a new law as to procedure is enacted and goes into effect, it must from that time govern and regulate the proceedings. But the steps already taken, the status of the case ... and all things done under the late law will stand unless an intention to the contrary is plainly manifested[.]" *Clark v. Kansas City, St. L. & C.R. Co.*, 219 Mo. 524, 118 S.W. 40, 43

(1909). *See also Jones by Williams v. Missouri Dept. of Social Serv.*, 966 S.W.2d 324, 329 (Mo.App.1998); *Pierce v. Missouri Dept. of Social Serv.*, 969 S.W.2d 814, 823 (Mo.App.1998); *State v. Thomaston*, 726 S.W.2d 448, 462 (Mo.App.1987). An intent to apply section 536.016 retrospectively cannot be gleaned from the statute.

*Point V*

Appellants argue that the rules' "asymmetrical pricing standards," which prohibit a utility from providing a financial advantage to its affiliates and establish a "fair market price" that a utility may charge, are void because they were not promulgated in accordance with section 393.140(5).[2] This section, appellants argue, requires the PSC to conduct an adjudicatory hearing, which, implicitly, is a contested case under the MAPA, to determine whether a utility's current rates are "unjust, unreasonable, unjustly discriminatory or unduly preferential...." Sec. 393.140(5).

■ The underlying premise of appellants' argument is faulty. The PSC did not establish the "asymmetrical pricing standards" pursuant to its adjudicatory authority under section 393.140(5). Instead, the standards were enacted in accordance with the PSC's rulemaking authority under section 393.140(11), which prohibits a utility from charging or "extend[ing] to any person or corporation any form of

---

**2.** The "asymmetrical pricing standards" are set forth in subsection (2) of the rules, which provides:

(A) A regulated [utility] shall not provide a financial advantage to an affiliated entity. For purposes of this rule, a regulated [utility] shall be deemed to provide a financial advantage to an affiliated entity if—

1. It compensates an affiliated entity for goods or services above the lesser of—

A. The fair market price; or

B. The fully distributed cost to regulated [utility] to provide goods or services for itself; or

2. It transfers information, assets, goods or services of any kind to an affiliated entity below the greater of—

A. The fair market price; or

B. The fully distributed cost to regulated [utility].

\* \* \*

(D) The regulated [utility]shall not participate in any affiliated transactions which are not in compliance with this rule, except as otherwise provided in section (10) of this rule [which provides a procedure by which utility corporations may obtain a variance from these standards].

contract or agreement ... except such as [are] regularly and uniformly extended to all persons and corporations ...," and further empowers the PSC to establish "such rules and regulations" to this effect.

This Court explained the important differences between sections 393.140(5) and 393.140(11) in *McBride & Son Builders, Inc. v. Union Elec. Co.*, 526 S.W.2d 310, 313 (Mo.1975):

> It would seem to be a reasonable interpretation of subsection (5) that it is primarily intended to authorize determination of improper conduct such as charging unjust, unreasonable or unlawful rates or engaging in discriminatory conduct, while subsection (11) is primarily concerned with rule making, and prohibiting any form of contract or agreement except such as are regularly and uniformly extended to all persons and corporations under like circumstances. The Commission has authority to make rules for that purpose.

■ As made clear in *McBride*, the PSC has the rulemaking authority, pursuant to section 393.140(11), to prohibit a utility from extending contracts or agreements that are not of the type regularly and uniformly extended to all other entities. The enactment of the "asymmetrical pricing standards"—in essence, a simple prohibition to all utilities against providing a financial advantage to their affiliates—is a proper manifestation of this authority.

■ Appellants argue, however, that by establishing a "fair market price," the standards do much more than merely mandate the uniformity of rates. In setting a "fair market price"—a maximum price a utility may compensate its affiliate for goods or services, and a minimum price a utility may charge its affiliate for goods or services—appellants claim that the PSC is necessarily making a determination that their current rates are "unjust, unreason-

able, unjustly discriminatory or unduly preferential." Section 393.140(5). It follows, appellants explain, that proper enactment of the "asymmetrical pricing standards" could only be accomplished via the PSC's adjudicatory or contested case authority under section 393.140(5), and not through the PSC's rulemaking authority under section 393.140(11).

Again, appellants' arguments are unavailing. In setting the "fair market price," the PSC did not determine that a specific utility's rates were "unjust, unreasonable, unjustly discriminatory or unduly preferential," but established a rate standard for the *entire* public utility industry. *Compare* section 536.010(2) (defining "Contested case" as "a proceeding before an agency in which legal rights, duties or privileges of *specific parties*" are determined) *with* section 536.010(4) (defining "Rule" as "each agency statement of *general applicability* that implements ... or prescribes law or policy....") Thus, the PSC was not engaged in an adjudication (contested case) but rulemaking. Section 393.140(5) is therefore irrelevant to our review of the rules.

*Point VI*

Appellants argue that the PSC acted outside its authority because the rules impose record keeping requirements on both the utilities and their affiliates. As we understand the argument, record keeping is not directly related to the ratemaking function of the PSC and, in any event utilities' affiliates are not subject to PSC regulations whatsoever.

■ Respondents concede that the rules regulate certain aspects of the relationship between utilities and their affiliates. In its brief, the PSC explained that the rules are a reaction to the emergence of a profit-producing scheme among public utilities termed "cross-subsidization," in

which utilities abandon their traditional monopoly structure and expand into non-regulated areas. This expansion gives utilities the opportunity and incentive to shift their non-regulated costs to their regulated operations with the effect of unnecessarily increasing the rates charged to the utilities' customers. *See United States v. Western Elec. Co.*, 592 F.Supp. 846, 853 (D.D.C.1984) ("As long as a [public utility] is engaged in both monopoly and competitive activities, it will have the incentive as well as the ability to 'milk' the rate-of-return regulated monopoly affiliate to subsidize its competitive ventures....") To counter this trend, the new rules—and in particular, the asymmetrical pricing standards—prohibit utilities from providing an advantage to their affiliates to the detriment of rate-paying customers. In addition, to police compliance, the rules require the utilities to ensure that they and their affiliates maintain records of certain transactions.

The PSC's authority to enact these regulations is set out in chapter 393. Section 393.130.2 precludes a utility from "directly or indirectly by any special rate ... or other device or method ... [from] collect[ing] or receiv[ing] from any person or corporation ... greater or less[er] compensation" for that utility's services than it charges every other person or corporation. Section 393.140(1) states that the PSC shall have "general supervision" over all gas utilities, electric utilities, and heating utilities. Reading section 393.130.2 in conjunction with the broad supervisory power granted under section 393.140(1), the PSC's authority to require utilities to maintain records so that it may determine whether utilities are following their obligations under section 393.130.2 is firmly established.

■■■ Likewise, the PSC has authority to extend the reach of the rules to a utili-ty's affiliates. Section 393.140(12) precludes regulation of a utility's affiliate where the affiliate is "substantially kept separate and apart" from the business of the utility. However, that section also states that the PSC shall have the "right to inquire as to, and prescribe the apportionment of, capitalization, debts and expenses fairly and justly to be awarded to or borne by the ownership, operation, management or control of such gas plant, electric plant, [or heating plant]...." Sec. 393.140(12); *see State ex rel. Associated Natural Gas Co. v. Pub. Serv. Comm'n*, 706 S.W.2d 870, 880–81 (Mo.App.1985). Thus, where the affiliate is not one "substantially kept separate" from the utility, the PSC is authorized to "inquire" into certain aspects of the affiliate's operations as they relate to the capitalization, debts, expenses, etc., of the utility. By requiring affiliates to maintain records of certain transactions with regulated utilities, the rules at issue do no more than is prescribed in section 393.140(12). With respect to allegations by appellants that the PSC will enforce these rules against affiliates that are, in fact, "substantially kept separate" from the utilities, any perceived violation is best litigated on a case-by-case basis when and if those circumstances arise.

*Point VII*

Finally, appellants argue that the rules contain impermissibly vague provisions in violation of the Due Process Clauses of the state and federal constitutions. In response respondents argue that this Court should refrain from deciding this issue because appellants lack standing and the challenge is not yet ripe. Alternatively, respondents argue that the rules are not vague.

■■■ Assuming arguendo that appellants have standing and the case is ripe,

they nevertheless fail to establish that the rules' provisions are unconstitutionally vague. To determine whether a particular enactment is void for vagueness, courts ask "whether the language conveys to a person of ordinary intelligence a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Cocktail Fortune, Inc. v. Supervisor of Liquor Control,* 994 S.W.2d 955, 957 (Mo. banc 1999). In so doing, however, courts expect "neither absolute certainty nor impossible standards of specificity." *Id.* And when construing civil enactments, as opposed to criminal enactments, courts have a "greater tolerance ... because the consequences of imprecision are qualitatively less severe." *Id.* at 957–58. In this case, the terms and provisions cited by appellants, when read in context, are clear and sufficiently place appellants and others within the public utility industry on notice of the proscribed conduct. *See id.* at 957. For example, the first allegedly vague term, "unfair activity," is not at all vague because it is specifically and expressly defined in another section of the rules, 4 CSR 240–40.016(1)(P), 4 CSR 240–40.015(1)(J), 4 CSR 240–80.015(1)(J). The other terms complained of are simply read out of context and merit no further discussion.

## V.

For the foregoing reasons, this Court holds that the PSC had authority to promulgate the rules and that promulgation of the rules satisfied all relevant rulemaking procedures. Thus, the order of rulemaking was lawful and reasonable. The judgment of the circuit court is affirmed.

All concur.