Emily BAKER, Respondent,

v.

DEPARTMENT OF MENTAL HEALTH FOR the STATE OF MISSOURI, Appellant.

No. WD 72018.

Missouri Court of Appeals, Western District.

April 26, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 2011.

Application for Transfer Denied Aug. 30, 2011.

Geoffery E. Willlmoth, Kansas City, MO, for appellant.

Jonathan D. McQuilkin, Columbia, MO, for respondent.

Before: ALOK AHUJA, P.J., and VICTOR C. HOWARD and CYNTHIA L. MARTIN, JJ.

ALOK AHUJA, Judge.

The Department of Mental Health ("DMH") appeals the Saline County Circuit Court's judgment reversing DMH's decision to place Emily Baker on the employee disqualification list for physically abusing a consumer and class II neglect.[1] DMH argues that Baker poured water onto a consumer to control the consumer's behavior, which constituted maltreatment or mistreatment in a brutal or inhumane manner, and that she also withheld reasonable and necessary services to a consumer by failing to report verbal abuse by another employee, which Baker witnessed. We agree with the circuit court that the record fails to support DMH's findings of physical abuse and class II neglect, and therefore affirm the circuit court's judgment reversing DMH's decision.

## Factual Background

Baker worked at the Marshall Habilitation Center as a client attendant trainee providing care to consumers. K.T. was a consumer suffering from numerous communicative and mental disorders. On February 10, 2007, K.T. had a tantrum in which she knocked her medication and juice out of an employee's hands, and threw herself onto the floor. K.T. kicked and screamed, and refused to get up. Employees often used water as a less invasive means of controlling K.T.'s outbursts. Consequently, as the tantrum escalated, Baker retrieved a half-full pitcher of water and poured it onto K.T. while another employee held K.T.'s wrists and straddled her. Baker then refilled the pitcher, and a co-worker threatened to pour more water on K.T. if she did not cooperate. K.T.'s behavior subsided.

The DMH subsequently charged Baker with physically abusing K.T. by mistreating or maltreating her in a brutal or inhumane manner. In a separate incident also on February 10, 2007, Baker witnessed another co-worker refer to a different consumer as "you bitch" after the consumer pinched or hit Baker's co-worker. DMH charged Baker with class II neglect for her failure to report this statement.

Following these incidents and a subsequent investigation, Karen Moss, DMH's acting superintendent, sent Baker a letter finding that she had committed physical abuse and class II neglect. Baker requested a meeting with Moss to provide additional facts regarding the incidents. After this meeting, Moss sent Baker a second letter, substantiating the preliminary charges, terminating her as a probationary employee, and directing that her name be placed on the DMH's employee disqualification list.

Baker appealed this finding. Following a hearing, an administrative law judge issued an opinion upholding the charges of physical abuse and neglect. Baker appealed that decision to the circuit court, but the case was remanded for rehearing because the recording equipment had failed during the administrative hearing. On remand, another administrative law judge substantiated the findings of one count of physical abuse and one count of class II neglect. Baker again appealed to the circuit court. The court reversed the findings of physical abuse and class II neglect, and ordered that Baker's name be removed from the employee disqualification list. DMH appeals.

## Analysis

■ We review DMH's decision rather than the circuit court's judgment. *Klein*

---

1. The DMH refers to patients under its care as "consumers."

*v. Mo. Dep't of Health & Senior Servs.*, 226 S.W.3d 162, 164 (Mo. banc 2007). "The decision of the agency on factual issues is presumed to be correct until the contrary is shown and the court is obliged to sustain the [DMH's] order if it is supported by substantial evidence on the record as a whole." *Oakes v. Mo. Dep't of Mental Health*, 254 S.W.3d 153, 157 (Mo. App. E.D.2008) (citing *State ex rel. Atmos Energy Corp. v. Pub. Serv. Comm'n*, 103 S.W.3d 753, 759 (Mo. banc 2003)). "We must look to the whole record in reviewing the agency's decision, not merely the evidence that supports its decision." *Id.* (citing *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003)). "Where the agency decision involves the interpretation of the law, as is the case here, our review is de novo." *Id.* (citing *Mo. Coal. for the Env't v. Herrmann*, 142 S.W.3d 700, 701 (Mo. banc 2004)).

The DMH's regulations in effect at the time defined physical abuse as:

1. An employee purposefully beating, striking, wounding or injuring any consumer; or

2. In any manner whatsoever, an employee mistreating or maltreating a consumer in a brutal or inhumane manner. Physical abuse includes handling a consumer with any more force than is reasonable for a consumer's proper control, treatment or management.

9 C.S.R. 10–5.200.1(F) (2008).[2]

Under the regulations, any person found to have committed physical abuse is placed on a disqualification registry preventing him or her from working at a DMH-licensed facility.

If the department substantiates that a person has perpetrated physical abuse, sexual abuse, class I neglect, or misuse of funds/property, the perpetrator shall not be employed by the department, nor be licensed, employed or provide services by contract or agreement at a residential facility, day program or specialized service that is licensed, certified or funded by the department. The perpetrator's name shall be placed on the department Disqualification Registry pursuant to section 630.170, RSMo. Persons who have been disqualified from employment may request an exception by using the procedures described in 9 CSR 10–5.210 Exception Committee Procedures.

9 C.S.R. 10–5.200.11 (2008).

The administrative law judge concluded that Baker's action of pouring a half-full pitcher of water onto K.T. constituted "mistreating or maltreating a consumer in a brutal or inhumane manner [and] [a]s such, this behavior meets the definition of Physical Abuse." We disagree.

■ "[T]he terms 'brutal' and 'inhumane' have … been defined under Missouri law. 'Brutal' is defined as 'grossly ruthless or unfeeling.' 'Inhumane' is defined as 'lacking pity, kindness or mercy; savage.'" *Oakes*, 254 S.W.3d at 158 (quoting *Jenkins v. Bryles*, 802 S.W.2d 177, 182 (Mo.App. S.D.1991)).

The application of these definitions in *Oakes* and *Jenkins* establish that Baker's conduct in this case cannot be deemed to be "brutal or inhumane." In *Oakes*, the consumer escaped from a mental health facility into the street, and attacked Oakes, a facility employee, when Oakes sought to accost her. *Id.* at 155. During the altercation, Oakes grabbed the consumer's hair, trying to stop her biting attack. *Id.* The consumer kicked, screamed, cursed, and spit in Oakes' face, at which point Oakes spit back. *Id.*

---

**2.** The relevant regulation was amended effective May 30, 2009. The current definition of "physical abuse," which is generally similar to the definition quoted in the text, now appears at 9 CSR 10–5.200(G).

In concluding that no "brutal or inhumane" conduct had occurred, the court emphasized the lack of injuries to the consumer, and that the employee's conduct occurred in response to the consumer's attack. With respect to the hair pulling, the court explained:

> As conceded by counsel for DMH in oral argument, [the consumer] received no injuries from the incident. While Oakes did grab [the consumer's] hair, she did so in response to [the consumer's] vicious biting attack. The evidence shows that Oakes attempted to stop the biting attack as best she could without injuring [the consumer]. There was no evidence that Oakes did so in a "grossly ruthless or unfeeling" manner. Neither was there evidence that Oakes' conduct was "savage" or "lacking pity, kindness or mercy."

*Id.* at 158. Accordingly, "Oakes' conduct in pulling [the consumer's] hair under these circumstances was not brutal or inhumane as defined under Missouri law." *Id.*

The court also determined that Oakes' act of spitting on the consumer failed to rise to the level of "brutal or inhumane" treatment because the conduct was reflexive.

> There was no showing that Oakes' actions were "grossly ruthless or unfeeling." The evidence shows that the spitting was reflexive and that Oakes regretted doing it. Neither was there a showing that Oakes was being "savage" or "lacking pity, kindness or mercy." The evidence is clear that Oakes was not the attacker; rather she was the victim and was simply trying to protect herself without injuring her

mentally disabled attacker. In the process of doing this, she reflexively spit back when she was spit upon. This puerile behavior does not rise to the level of being brutal or inhumane.

*Id.*

In *Jenkins,* a DMH employee was dismissed following an incident in which a consumer intentionally spilled hair moisturizer on a table and the floor while the employee was attempting to groom the consumer's hair. 802 S.W.2d at 178. In response, the employee allegedly smeared some of the spilled moisturizer on the consumer's face, asking her derisively, "Do you want to wear it?" *Id.* The Personnel Advisory Board concluded that the employee's actions amounted to physical abuse, and upheld her dismissal. *Id.* at 181. The Southern District reversed, emphasizing that the employee inflicted no pain upon the consumer, the conduct was not rough, and the substance was neither harmful nor injurious. *Id.* at 182.

> There was no showing that appellant inflicted pain upon [the consumer] by rubbing hair moisturizer on her face. There was no showing that the hair moisturizer was a substance that was harmful or injurious to [the consumer's] person when placed upon her face. There was no showing that the rubbing of the hair moisturizer on [the consumer's] face was done roughly.

*Id.* Like *Oakes,* the court in *Jenkins* emphasized that, "[e]ven if it were conceded that appellant's actions constituted mistreatment or maltreatment of [the consumer], no brutality or savagery was shown. The facts as found by the board ... did not constitute mistreatment or maltreatment of [the consumer] in a brutal or inhuman manner." *Id.* at 182–83.[3]

---

**3.** DMH argues that we should ignore the definition of "brutal or inhumane" treatment used in *Jenkins* and adopted by *Oakes,* because *Jenkins* interpreted a criminal statute,

§ 630.155.1, RSMo 1986, which prohibited physical abuse in mental health institutions. We agree with *Oakes* that *Jenkins* is relevant here, because the definition of "physical

Here, the administrative law judge found that K.T. would engage in disruptive and potentially injurious behaviors including: throwing herself down onto the floor; non-compliance with required activities; and self injurious and assaultive behaviors including striking, kicking, scratching, pulling hair, pinching, and biting. As a result, the administrative law judge found that employees began using the "water treatment" method to control K.T.'s behavior because it was less invasive than either chemically or physically restraining her.

■ There are no facts in the record demonstrating that Baker treated K.T. in a "brutal or inhumane manner." Baker's actions were taken in response to K.T.'s outburst, which presented a risk of injury to K.T. or others. Baker's actions caused K.T. no injuries. Moreover, unlike in *Oakes* and *Jenkins,* Baker apparently did not act out of frustration with or anger towards K.T., but instead consistent with an existing practice employed to control K.T.'s behavior. The administrative law judge found that Baker had "no malicious intent when obtaining and pouring water on K.T.," and did so only because "she considered [the water method] less physically intrusive than other forms of physical intervention." Further, the administrative law judge found that K.T. possessed only a look of "shock" and "surprise" after the incident. Baker's conduct may well have

been inappropriate, and our opinion should not be read to condone it. Nevertheless, the record does not support the conclusion that Baker's actions were "brutal or inhumane" within the meaning of 9 C.S.R. 10–5.200.1(F) (2008), because they were not "grossly ruthless," "unfeeling," or "lacking pity, kindness or mercy," as required by prior Missouri cases. Thus, the facts as found by the administrative law judge do not support placing Baker on the employee disqualification list as a result of the February 10, 2007, incident involving consumer K.T.[4]

■ DMH also appeals the circuit court's judgment reversing the Class II neglect charge. The record sheds little light upon the circumstances underlying this charge. Baker's testimony provides the most detailed description of the incident which she failed to report:

> [Consumer] M.A. likes to spit food at you. And grab and pull and all kinds of things, so [feeding her from behind is] the easiest way to get the most food that she'll actually do. So Debbie was behind her and she had leaned over and I don't know—it was either a pinch or a scratch and she had just frustrated said, you bitch. And that was it.

A prior investigation conducted by DMH corroborated Baker's testimony, and found that the consumer in question "could be

---

abuse" in the statute and regulation are sufficiently similar to warrant a similar construction.

4. DMH argues that its decision can be upheld on the alternative basis that Baker used "more force than is reasonable for a consumer's proper control, treatment or management" under 9 C.S.R. 10–5.200.1(F)(2). But the administrative law judge's decision, which constitutes DMH's final decision, did not rely on the reasonable force provision. The administrative law judge instead substantiated

the charge of physical abuse based solely on his finding that Baker had engaged in "brutal or inhumane" treatment. In these circumstances we will not uphold the agency's decision on a basis on which it did not rely, and which implicates factual issues on which the agency made no findings. *See Oakes,* 254 S.W.3d at 158 (suggesting that a finding that employee used more force than reasonably necessary may require "evidence of a standard of care or what amount of force was reasonable in the context of this case").

very difficult to feed because of her behavior of spitting food" and that Debbie only called M.A. a "bitch" after M.A. pinched or hit her. Just as *Oakes* determined that "reflexive" spitting on a consumer, while inappropriate, did not amount to physical abuse, 254 S.W.3d at 158, we similarly conclude that under the circumstances of this case Baker's failure to report another employee's isolated, reflexive use of the word "bitch," out of frustration and in response to the consumer's pinch, scratch, or hit, does not rise to the level of a "failure [by Baker] to provide reasonable or necessary services to a consumer," as required to constitute class II neglect under 9 CSR 10–5.200.1(B) (2008).[5]

## Conclusion

The circuit court's judgment reversing the Department of Mental Health's decision is affirmed.

All concur.

---

**5.** Under 9 CSR 10–5.200.2(A) (2008), Baker had an obligation to "immediately file a written complaint" if she had "reasonable cause to believe that a consumer has been subjected to ... verbal abuse." At the time of the incident in question, "verbal abuse" was defined as "an employee using profanity or speaking in a demeaning, nontherapeutic, undignified, threatening or derogatory manner to a consumer or about a consumer in the presence of a consumer." 10 CSR 5–200.1(H) (2008). The regulations now define "verbal abuse" as "[a]n employee making a threat of physical violence to a consumer, when such threats are made directly to a consumer or about a consumer in the presence of a consumer." 10 CSR 5–200.1(I). The comment Baker overheard plainly would not constitute "verbal abuse" under the current definition.