

# In the Missouri Court of Appeals
## Eastern District
### DIVISION THREE

DAWNETTE GEEN, )  No. ED112026
)
    Appellant, )  Appeal from the Circuit Court of
) Madison County
vs. )  22MD-CC00216
)
MISSOURI DEPARTMENT OF MENTAL )  Honorable Daniel P. Fall
HEALTH, )
)
    Respondent. )  Filed: July 23, 2024

Before Lisa P. Page, P.J., Gary M. Gaertner, Jr., J., and Angela T. Quigless, J.

## OPINION

Dawnette Geen (Plaintiff) appeals from the trial court's judgment affirming the decision

of the Missouri Department of Mental Health (DMH) to place her on a disqualification registry

for two years based on DMH's administrative finding that she committed two acts of physical

abuse.  We reverse.

## BACKGROUND

Plaintiff was an in-home caregiver with Covenant Care Services, which contracts with

DMH to provide services to individuals with developmental disabilities.  Covenant Care

provides assistance to residents in individualized support living (ISL) facilities.  Plaintiff was the

caregiver for an adult male (Consumer[1]) in an ISL facility for four years.  Consumer's physical

---

[1] DMH defines individuals receiving services directly from any agency as "consumers."  *See* 9 C.S.R. 10-5.200(1)(B).

and mental disabilities limit his mobility, fine motor skills, and verbal communication, requiring significant hands-on assistance for all of his daily activities, to include physical restraint when his behavior becomes aggressive and unpredictable.

Plaintiff was accused of committing three separate acts of physical abuse involving Consumer in February 2022. The first incident on February 4, 2022, was ultimately unsubstantiated. The same day, Plaintiff's co-worker (Co-Worker 1) reported a second instance of alleged abuse, claiming she observed Consumer on the floor with the bottom half of his body under his wheelchair as Plaintiff held the wheelchair in place over his legs. Co-Worker 1 took a video of the incident, which was admitted into evidence at the hearing. A third incident in mid-February 2022 was also reported by another co-worker (Co-Worker 2) who claimed that while Consumer was sitting in his recliner she observed Plaintiff grab his wrists, hold them to his chest, and put her left knee on his abdomen. Co-Worker 2 took a photograph during the incident; however, it only showed Plaintiff from the back and Consumer sitting in the recliner with her leaning over him. Neither her left knee nor her hands are visible in the photo.

The Director of the Sikeston Regional Office for DMH (Director) investigated the allegations and made a preliminary determination that Plaintiff had physically abused Consumer. After Plaintiff pursued her right to a hearing, DMH issued its final decision affirming Director. DMH found there was sufficient credible evidence to establish Plaintiff used more force than was reasonable for Consumer's control and treatment in both the wheelchair and recliner incidents. Plaintiff was placed on the disqualification registry for two years. This appeal follows.

2

## DISCUSSION

Plaintiff raises three points on appeal. In her first point she claims the judgment affirming DMH's decision was arbitrary, capricious, and unreasonable because the evidence did not establish an objective standard of care.[2] We find point one dispositive and decline to review points two and three.

### *Standard of Review*

We review the decision of DMH rather than the trial court. *Baker v. Dept. of Mental Health for State of Missouri*, 344 S.W.3d 751, 753 (Mo. App. W.D. 2011) (internal citations omitted). Appellate review of an administrative agency decision is, as relevant to this appeal, whether the decision was supported by competent and substantial evidence upon the record as a whole, was authorized by law, and whether it was arbitrary, capricious, or unreasonable. Section 536.140.2 RSMo (2016).[3] We do not view the evidence in the light most favorable to the agency's decision. *Stone v. Missouri Dep't of Health & Senior Servs.*, 350 S.W.3d 14, 20 (Mo. banc 2011). Nevertheless, we defer to the factual findings and credibility determinations of the administrative agency. *Baker*, 344 S.W.3d at 754. If the evidence supports either of two opposing findings, we are bound by the factual determinations of the agency. *Peruque, LLC v. Shipman*, 352 S.W.3d 370, 374 (Mo. App. E.D. 2011). However, if the administrative decision is based on its interpretation and application of law, we review the agency's decision and the conclusions of law *de novo*. *Id*.

---

[2] DMH asserts point one on appeal is multifarious and improperly asserts a challenge to the decision as arbitrary and capricious and as unauthorized by law in violation of Rule 84.04(d), which requires separate points to challenge separate actions. However, we have discretion to review non-compliant points on appeal *ex gratia*. *Crowley v. Clarcor/Gen. Elec. & Treasurer*, 655 S.W.3d 778, 786 (Mo. App. W.D. 2022). It is clear from the point relied on, as well as the argument, that Plaintiff asserts the DMH decision is arbitrary and capricious. Therefore, we review point one on the merits.

[3] All further statutory references are to RSMo (2016).

Accordingly, although we defer to the factual findings of the agency decision regarding the facts of the alleged incidents, we review *de novo* its conclusions that these facts constituted physical abuse. *See Oakes v. Mo. Dept. of Mental Health*, 245 S.W.3d 153, 157 (Mo. App. E.D. 2008) (reviewing *de novo* agency's decision that facts constituted physical abuse).

*Analysis*

In point one, Plaintiff claims DMH's decision she committed physical abuse by handling Consumer with more force than was reasonable for his proper control, treatment, or management was arbitrary, capricious, and unreasonable because the evidence in the record did not establish an objective standard of care to measure what force would be reasonable in this case.

Plaintiff's testimony, as well as the testimony of others and the documentary evidence, including Consumer's individualized service plan (ISP), established that he suffered from significant physical limitations and was limited in his ability to communicate verbally. Consumer's behavior was erratic, unpredictable, aggressive, and physical with his caregivers and his mother (Mother). Mother testified Consumer had injured himself and previous caregivers had quit because of this behavior. Consumer's ISP detailed his need for "total hands-on assistance" with daily living, as well as to address his aggressive conduct to prevent him from harming himself and others, to include physical restraint.

Plaintiff testified she had established a good rapport with Consumer as his caregiver. She testified that during the wheelchair incident Consumer had scooted himself under the chair and she was only holding the wheelchair to keep him from pulling it onto himself and because his leg was in the cross-bar of the chair at the time from his kicking. With respect to the alleged incident occurring in the recliner, Plaintiff testified she was resting her knee on the armrest of the chair to keep Consumer from flipping the chair over, which he had a habit of doing.

4

Mother also testified on behalf of Plaintiff. She believed her son had a good relationship with Plaintiff, and she "never" had any concern about the care Plaintiff provided. She acknowledged he was challenging to care for when he was aggressive. Mother claimed Consumer would scoot under his wheelchair and broke his foot during one episode. She also agreed Consumer had flipped himself out of his recliner. Mother did not believe Plaintiff had ever abused her son.

Two of Plaintiff's co-workers reported the incidents of alleged abuse. Each of them participated in the investigation and testified at the DMH hearing. They stated Plaintiff restrained Consumer during the alleged incidents. Co-Worker 1 testified that in February 2022, she heard Consumer "hollering" from the living room. When she entered the room she saw Plaintiff standing with the wheelchair over his legs. She believed Consumer was trying to get away and Plaintiff was pushing on the wheelchair to pin him down.

Co-Worker 2 testified Plaintiff held Consumer down with her knee on his chest when he was sitting in his recliner. She did not believe it was necessary to restrain him at the time because he was not trying to get out of the chair or doing anything to merit such restraint. She took a photo of Plaintiff at the time, which DMH found was inconclusive.

Based upon the testimony from Plaintiff's co-workers, the video, photo, and the investigative report, DMH found that Plaintiff's actions in the wheelchair incident and in the recliner incident constituted physical abuse. DMH concluded in both instances Plaintiff handled the Consumer with more force than was reasonable for the Consumer's proper control, treatment, or management.

An agency must have a rational, predictable basis for its decision, based on objective guidelines and data rather than "mere surmise, guesswork, or 'gut feeling.'" *Missouri Nat'l*

5

*Ass'n v. Missouri State Bd. of Educ.*, 34 S.W.3d 266, 281 (Mo. App. W.D. 2000) (citing *Barry Serv. Agency Co. v. Manning*, 891 S.W.2d 882, 893 (Mo. App. W.D. 1995)). Without such a rational, objective basis, the agency decision is arbitrary, capricious, and unreasonable. *Compare Oakes*, 245 S.W.3d at 157-58 (reversing as arbitrary, capricious, and unreasonable agency decision that was not based on existing legal standards and definitions but on "personal whim" of fact finder), with *Missouri Nat'l Ass'n*, 34 S.W.3d at 281 (agency decision that followed specific procedures was not arbitrary and capricious but was based on objective reasons). 9 C.R.S. 10-5.200(E) previously defined physical abuse as:

1. An employee purposefully beating, striking, wounding or injuring any consumer; or

2. In any manner whatsoever, an employee mistreating or maltreating a consumer in a brutal or inhumane manner. Physical abuse includes handling a consumer with any more force than is reasonable for a consumer's proper control, treatment or management.

However, in 2009, the definition changed and separately enumerated "brutal or inhumane manner" in 9 C.R.S. 10-5.200(G)(2) and "any more force than is reasonable" in subsection (G)(3).

The subsequent amendment to this provision does not eliminate the requirement that there must be some objective legal standard to determine what constitutes more force than is necessary in the context of the particular facts of each case. While 9 C.S.R. 10-5.200 does not define "more force than is reasonable," the court in *Oakes* reviewed DMH's finding that Oakes committed physical abuse of a consumer, including using more force than was reasonably necessary in her treatment of the consumer. *Oakes*, 254 S.W.3d at 158. This determination was premised upon her supervisor's opinion that she would not treat anyone, much less a consumer, as Oakes did in that case. *Id*. Our court found this was a "personal *ad hoc* standard" as opposed to an objective standard and as such was "patently arbitrary, capricious, and unreasonable." *Id*.

6

n.2.  In fact, there was no evidence of any standard of care or legal definition to establish what amount of force was reasonable under the facts of the case.  *Id*.  As a result, the DMH decision was arbitrary and capricious.

Similarly here, DMH determined that in each incident Plaintiff used more force than was reasonable for the Consumer's control, treatment, and management.  On appeal, DMH argues her restraint of Consumer in each instance was more than likely to make his aggressive behavior worse because of his impulse control issues which may be an objective standard to evaluate Plaintiff's conduct.  But DMH makes this assertion for the first time on appeal and the record does not reflect any evidence before the administrative hearing officer to support such a standard or conclusion.  Thus, we are unable to review whether this was an appropriate objective standard to measure Plaintiff's care of Consumer.

Instead, DMH's decision was improperly based upon the simple fact Plaintiff exercised her best judgment in restraining Consumer, which did not meet the subjective approval of her co-workers or Director.[4]  While these witnesses may not have treated Consumer the same as Plaintiff, their opinions – absent an objective standard of care as to what is reasonable in the context of the circumstances of each allegation – are no more than the "personal *ad hoc* standard" the *Oakes* court held was "patently arbitrary, capricious, and unreasonable."  *Id*. n.2.; *see also Weisenborn ex rel. Shoemaker v. Missouri Dept. of Mental Health*, 332 S.W.3d 288, 293 (Mo. App. W.D. 2011) (to meet basic standards of due process and avoid being arbitrary, capricious, or unreasonable, an agency decision must be made using some objective data rather than acting in a "totally subjective" manner without any guidelines or criteria).

---

[4] Both parties agree restraint by itself does not constitute physical abuse.

The evidence in the record before us shows Consumer has extensively limited communication skills, required hands-on assistance with every daily activity including restraint for his aggressive behavior which previously resulted in harm to himself and caused caregivers to quit. Without a finding of what Plaintiff actually did in each instance and how this violated an articulated legal standard or objective guideline, and particularly in light of the evidence in the record before us as discussed *supra*, DMH's conclusion was arbitrary, capricious, and unreasonable. Point one is granted.

## CONCLUSION

The judgment of the trial court is reversed and DMH is ordered to rescind its findings of physical abuse and remove Plaintiff's name from the disqualification registry.

_____
Lisa P. Page, Presiding Judge

Gary M. Gaertner, Jr., and
Angela T. Quigless, J., concur.

8