Emily BAKER, Respondent,

v.

**DEPARTMENT OF MENTAL HEALTH for the State of Missouri, Appellant.**

No. WD 75423.

Missouri Court of Appeals, Western District.

June 25, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 2013.

Application for Transfer Denied Oct. 1, 2013.

D. Ryan Taylor, Kansas City, MO, for appellant.

Jonathan D. McQuilkin, Columbia, MO, for respondent.

Before Division Three: JOSEPH M. ELLIS, Presiding Judge, LISA WHITE HARDWICK, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

The Department of Mental Health ("DMH") appeals the circuit court's judgment awarding attorney fees and expenses in the amount of $21,683.01 to Emily Baker ("Baker") as a prevailing party pursuant to section 536.087.[1] Baker successfully appealed DMH's decision to place Baker on the employee disqualification list for allegedly abusing a consumer and class II neglect (the "Underlying Action"). DMH argues that the circuit court committed legal error in finding that DMH's position in the Underlying Action was not substantially justified. DMH alternatively argues that the circuit court erred in awarding Baker attorney fees at a rate in excess of the statutorily prescribed rate of $75 per hour.

We affirm in part, but reverse the amount of the award, and remand for recalculation of the award and for calculation of Baker's reasonable fees and expenses incurred in connection with this appeal.

### Factual and Procedural History [2]

Baker worked at the Marshall Habilitation Center as a client attendant trainee providing care to consumers. K.T. was a consumer suffering from numerous communicative and mental disorders. On February 10, 2007, K.T. had a tantrum in which she knocked her medication and juice out of an employee's hands, and threw herself onto the floor. K.T. kicked and screamed, and refused to get up. Employees often used water as a less invasive means of controlling K.T.'s outbursts. Consequently, as the tantrum escalated, Baker retrieved a half-full pitcher of water and poured it onto K.T. while another em-

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

2. The factual and procedural history to the point of DMH's appeal in the Underlying Ac-

tion is quoted, verbatim, from our reported decision in *Baker v. Department of Mental Health*, 344 S.W.3d 751 (Mo.App. W.D.2011).

ployee held K.T.'s wrists and straddled her. Baker then refilled the pitcher, and a co-worker threatened to pour more water on K.T. if she did not cooperate. K.T.'s behavior subsided.

DMH subsequently charged Baker with physically abusing K.T. by mistreating or maltreating her in a brutal or inhumane manner. In a separate incident also on February 10, 2007, Baker witnessed another co-worker refer to a different consumer as "you bitch" after the consumer pinched or hit Baker's co-worker. DMH charged Baker with class II neglect for her failure to report this statement.

Following these incidents and a subsequent investigation, Karen Moss ("Moss"), DMH's acting superintendent, sent Baker a letter finding that she had committed physical abuse and class II neglect. Baker requested a meeting with Moss to provide additional facts regarding the incidents. After this meeting, Moss sent Baker a second letter, substantiating the preliminary charges, terminating her as a probationary employee, and directing that her name be placed on the DMH's employee disqualification list.

Baker appealed this finding. Following a hearing, an administrative law judge issued an opinion upholding the charges of physical abuse and neglect. Baker appealed that decision to the circuit court, but the case was remanded for rehearing because the recording equipment had failed during the administrative hearing. On remand, another administrative law judge substantiated the findings of one count of physical abuse and one count of class II neglect. Baker again appealed to the circuit court. The circuit court reversed the findings of physical abuse and class II neglect, and ordered that Baker's name be removed from the employee disqualification list. DMH appealed.

We affirmed the circuit court's judgment reversing the DMH's decision in *Baker v. Department of Mental Health*, 344 S.W.3d 751 (Mo.App. W.D.2011). While that appeal was pending, Baker filed a motion for attorney's fees and expenses in the circuit court pursuant to section 536.087, which permits a party who prevails in an agency proceeding or civil action, or on judicial review of an agency proceeding, to recover reasonable fees and expenses "unless . . . the position of the state was substantially justified or . . . special circumstances make an award unjust." Section 536.087.1 and .2. After our decision in *Baker* became final, the circuit court conducted an evidentiary hearing, and then entered its judgment granting Baker's motion for attorney fees and expenses pursuant to section 536.087. DMH appeals.

### Standard of Review

When fees and expenses are awarded to a prevailing party pursuant to section 536.087, our standard of review is described in section 536.087.7 as follows:

> The reviewing or appellate court's determination on any judicial review or appeal heard under this subsection shall be based solely on the record made before the agency or court below. The court may modify, reverse or reverse and remand the determination of fees and other expenses if the court finds that the award or failure to make an award of fees and other expenses, or the calculation of the amount of the award, was arbitrary and capricious, was unreasonable, was unsupported by competent and substantial evidence, or was made contrary to law or in excess of the court's or agency's jurisdiction.

■ Whether an award of fees and expenses is supported by competent and substantial evidence is judged by examining the record as a whole. *Oakes v. Mo. Dept.*

*of Mental Health,* 254 S.W.3d 153, 157 (Mo.App. E.D.2008) (citing *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222 (Mo. banc 2003)). "The evidence is *not* viewed in the light most favorable to the [ ] decision."[3] *Stone v. Mo. Dept. of Health and Senior Services,* 350 S.W.3d 14, 20 (Mo. banc 2011) (citing *Hampton,* 121 S.W.3d at 223).

■ Whether an award of fees and expenses pursuant to section 536.087 was made contrary to law or in excess of the court's or agency's jurisdiction or authority raises a question of law we review *de novo. Sanders v. Hatcher,* 341 S.W.3d 762, 766 (Mo.App. W.D.2011).

## Analysis

### Point I

■ In its first point on appeal, DMH asserts that the circuit court committed legal error when it determined that DMH was not substantially justified in its action against Baker. DMH argues that the circuit court was required as a matter of law, but failed, to consider and make written findings about: (i) whether DMH acted in good faith; (ii) how the facts appeared to DMH at the time it initiated its action; and (iii) the thoroughness of DMH's investigation. DMH also argues that by failing to consider these required factors, the circuit court violated section 536.087.3 and based its determination solely on the fact that Baker prevailed in the Underlying Action. We disagree.

**(i) The trial court was not required to consider or make written findings on the factors identified by DMH**

■ A prevailing party in an agency proceeding or civil action brought by or against the state is entitled to seek an award of reasonable fees and expenses incurred in the agency proceeding or civil action *"unless the court or agency finds that the position of the state was substantially justified* [.]" Section 536.087.1 (emphasis added). Similarly, a prevailing party in an action for judicial review of an agency proceeding is entitled to seek an award of reasonable fees and expenses incurred during the agency proceeding *"unless the court finds that during such agency proceeding the position of the state was substantially justified* [.]" Section 536.087.2 (emphasis added).

" 'The intent of [section 536.087] is to require agencies to carefully scrutinize

---

3. Baker is incorrect in her assertion that we review the evidence in the light most favorable to the judgment and disregard evidence that might support findings different from those made below given the standard of review mandated by section 536.087. The statutory standard of "competent and substantial evidence" is the equivalent of the constitutional standard "supported by competent and substantial evidence upon the whole record" applicable to judicial review of administrative decisions. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003). Because the statutory standard of review we are to apply is indistinguishable from the constitutional standard of review applicable to administrative agency decisions, the practical effect is that the *Hampton* standard of review controls the award of attorney fees and expenses pursuant to section 536.087, even

when the award is made by a circuit court. The authorities cited by Baker (*Sprenger v. Mo. Dept. of Public Safety,* 248 S.W.3d 626, 628 (Mo.App. W.D.2008) and *Plumb v. Mo. Dept. of Social Services,* 246 S.W.3d 475, 478– 79 (Mo.App. E.D.2007)) should be disregarded to the extent they inaccurately describe our standard of review as viewing the evidence in the light most favorable to the decision or judgment. *See* ALFRED S. NEELY IV, 20 MISSOURI PRACTICE, ADMINISTRATIVE PRACTICE AND PROCEDURE section 10:32 n. 63 (4th ed. 2012 Pocket Part). Notably, in a more recent decision from this court, we correctly observed that our standard of review when attorney fees and expenses have been awarded pursuant to section 536.087 is, effectively, the *Hampton* standard. *See Sanders v. Hatcher,* 341 S.W.3d 762, 766 (Mo.App. W.D.2011).

agency and court proceedings and to increase accountability of the administrative agencies.'" *Sanders,* 341 S.W.3d at 766 (citation omitted). "The statute 'was designed to relieve the financial burden a private party would face in challenging abusive or unreasonable government actions.'" *Id.* (citation omitted).

Here, Baker did not prevail in the initial agency proceeding brought by DMH before the administrative law judge. She did prevail, however, in her actions for judicial review both before the circuit court and in this court. Thus, her request for an award of reasonable fees and expenses implicates section 536.087.2. Pursuant to the plain language of section 536.087.2, Baker is entitled to an award for her reasonable fees and expenses unless DMH's position was substantially justified.

Though "substantial justification" is determinative of a prevailing party's right to recover fees and expenses under section 536.087, the legislature did not define the term. "Missouri courts have interpreted the term 'substantially justified' to mean there must be 'reasonable basis both in law and fact' for the government's action." *Greenbriar Hills Country Club v. Dir. of Revenue,* 47 S.W.3d 346, 354 (Mo. banc 2001) (citations omitted). An agency's action must be *clearly* reasonable not just marginally reasonable. *Dishman v. Joseph,* 14 S.W.3d 709, 717 (Mo.App. W.D.2000) (emphasis added). "The burden is on the [government] to establish substantial justification[.]" *Greenbriar,* 47 S.W.3d at 354.

DMH argues that in determining whether government action had a "reasonable basis in law and in fact," three factors must be evaluated as a matter of law: (i) the agency's good faith; (ii) how the facts appeared to the agency at the time it initiated its action; and (iii) the thoroughness of the agency's investigation. DMH effectively argues that an agency cannot

be found to lack substantial justification *unless* the agency acted in bad faith in light of the facts before it and following a deficient investigation. DMH cites no authority for this proposition.

Certainly, we have recognized the general relevance of the factors identified by DMH. In *Pulliam v. State,* 96 S.W.3d 904, 907 (Mo.App. W.D.2003), we held that "[i]n reaching a fee decision, the [court] *may* consider the facts as determined in the underlying action, how those facts reasonably may have appeared at the time the action was initiated, and the thoroughness of the investigation preceding the action." (Emphasis added.) However, the general relevance of these factors does not suggest that the factors *must* be considered, or that the factors must be found unfavorably to an agency to permit the conclusion that the agency acted without substantial justification.

■ In fact, our courts have rejected the notion that an agency's bad faith must be demonstrated as a condition to finding a lack of substantial justification. *Greenbriar,* 47 S.W.3d at 354; *see also McMahan v. Mo. Dept. of Social Services,* 980 S.W.2d 120, 125 (Mo.App. E.D.1998); *Dishman,* 14 S.W.3d at 717.

> [Though] [g]ood faith or lack thereof will often be a very relevant and important consideration in making the substantial justification determination.... proof of a lack of good faith is *not* a mandatory element of recovery of fees. If the legislature had intended the test for the award of fees to be whether the claimant showed that the government acted in good faith, it could have said so. Instead, it put the burden on the government to prove that its position was substantially justified.

*Dishman,* 14 S.W.3d at 717 (emphasis added). *Dishman* further explains:

[W]e and other courts have previously held that this means that the State must show that it had a reasonable basis in both fact and law for its position, and that this basis was not merely marginally reasonable but clearly reasonable, although not necessarily correct.... While this standard would largely overlap with a good faith standard, the two standards are not necessarily synonymous. This substantial justification standard ... is the standard which the statute requires.... [T]o the extent [previous authority] suggest that "good faith" is a necessary element of determining substantial justification or that the claimant bears the burden of proof of substantial justification, they should no longer be followed.

*Id.*

We thus conclude that DMH's assertion that the circuit court was required as a matter of law to consider whether DMH acted in good faith, how the facts appeared to DMH at the time it initiated its action, and the thoroughness of DMH's investigation, is not supported by the law.

It follows that DMH's related assertion that the circuit court erred because it failed to make written findings with respect to these factors is without merit. Section 536.087.6 requires:

> The decision of a court or an agency on the application for reasonable fees and expenses shall be in writing, separate from the judgment or order of the court or the administrative decision which determined the prevailing party, and shall include written findings and conclusions and the reason or basis therefor.

Though this section requires written findings and conclusions, it does not specify particular "factors" about which findings or conclusions are required. Missouri courts have construed the circuit court's obligation under section to 536.087.6 as

limited to affording a clear and concise explanation for its determination on the issue of substantial justification. *See McMahan*, 980 S.W.2d at 124 (the court must state in writing its findings regarding whether the position of the State was "substantially justified," and a concise but clear explanation of the reasons for those findings and conclusions).

In any event, Rule 78.07(c) provides that "[i]n all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." DMH did not file a Rule 78.07(c) motion. Its complaint that the judgment failed to make allegedly required findings, even if meritorious, has not been preserved for appellate review.

DMH's point relied on advances the additional argument that because the circuit court did not make findings on the factors identified above, we must find that the circuit court improvidently concluded that DMH was not substantially justified simply because Baker prevailed in the Underlying Action. We disagree.

■ It is true that the mere fact an agency loses on the merits "creates no legal presumption that its position was not substantially justified." Section 536.087.3. DMH fails to persuasively explain how the judgment manifests a violation of this statutory prohibition.

The circuit court found, in pertinent part:

> [N]either the record, nor the evidence adduced by DMH at hearing, provide a basis for finding that the position of the DMH in this case was substantially justified ... The *facts contained in the record which support this finding include* the following:

. . . .

Prior to this incident, a practice had been informally implemented with [K.T.] that showing her a pitcher of water, or splashing water on K.T., would aid in redirecting her from her potentially injurious behaviors and was used by the staff at Marshall Habilitation Center (MHC) as a less physical alternative to the holding or blocking of K.T. as required by her [Behavior Support Plan]. The use of water was not intended by the staff of MHC to be cruel or injurious to K.T., but was intended as a less physical alternative to aid in calming K.T. when these behaviors occurred. This practice was occurring prior to [Baker's] employment with MHC and was observed or engaged in by more senior staff than [Baker] at MHC.

DMH alleges that the practice was brutal and inhumane in that K.T. was afraid of water. The record does not support this allegation. Deborah Masters was asked in her deposition what was the purpose of showing K.T. the pitcher of water and she stated "Because I guess she was, you know, scared of it, and she would normally come out of her fits." [ ] Later in the deposition, Masters clarified her statement stating " . . . I don't know if she was really scared of the water. I mean, she took a shower just fine, you know, so I don't think she was actually really scared of the water." [ ]

This issue involving the splashing of water was not specifically addressed in the formal training that was provided to [Baker]. [Baker] observed more senior employees engaging in the practice and was instructed by Debbie Masters (a more senior employee) to obtain the pitcher in this instance. [Baker] was in essence informally trained to engage in this practice.

[Baker] was acting at the direction of a more senior employee, engaging in a practice that was openly conducted with this consumer, and was attempting to prevent K.T. from engaging in maladaptive behaviors by the splashing of the water. [Baker] did not intend to engage in a brutal or inhumane act toward K.T., nor is the splashing of water on K.T. under these circumstances brutal or inhumane.

In regards to the allegation of Class II neglect, the actions of Debbie Masters in calling consumer M.A. a "bitch" after M.A. pinched or hit her was reflexive, and [Baker's] failure to report this isolated use of profanity does not rise to the level of failing to provide reasonable or necessary services to the consumer.

(Emphasis added.)

DMH claims that the circuit court merely "rehashed" evidence supporting the conclusion in the Underlying Action that Baker did not commit abuse or class II neglect. DMH fails to appreciate, however, that the circuit court's findings are equally reflective of *why* DMH's investigation should reasonably have revealed in law and in fact that Baker's conduct did not rise to the level of abuse or class II neglect. We find it noteworthy that the circuit court's findings appear to plainly comment on the facts as they *should* have appeared to DMH, and thus on the sufficiency of DMH's investigation—factors DMH asserts the circuit court was obliged to consider.

Moreover, section 536.087.3 expressly provides that "[w]hether or not the position of the state was substantially justified shall be determined on the basis of the record . . . which is made in the agency proceeding or civil action for which fees and other expenses are sought[.]" It would have been impossible for the circuit court to abide by this statutory directive

without considering the findings and conclusions, and the basis for those findings and conclusions, in the Underlying Action. "In reaching a fee decision, the [court] *may* consider the facts as determined in the underlying action[.]" *Pulliam*, 96 S.W.3d at 907 (emphasis added). "The fee decision must be based on consideration of the entire record of the underlying action and any evidence presented in the fee proceeding." *Id.*

We see nothing in the judgment which would permit us to conclude that the circuit court presumed that DMH acted without substantial justification merely because Baker prevailed.

Point I is denied.

### Point II

▮ In its second point on appeal, DMH alternatively asserts that the circuit court erred in awarding Baker attorney fees at a rate in excess of $75 an hour. DMH alleges that competent and substantial evidence on the record as a whole did not support the circuit court's finding that a "special factor" justified an award of fees at a higher hourly rate. We agree.

Section 536.085(4) defines the "reasonable fees and expenses" that can be awarded a prevailing party deemed entitled to such an award pursuant to section 536.087. That section provides:

> [A]ttorney fees shall not be awarded in excess of seventy-five dollars per hour *unless the court determines that a special factor, such as the limited availability of qualified attorneys for the proceedings involved,* justifies a higher fee[.]

Section 536.085(4) (emphasis added). " 'The Division does not bear the burden of proving the absence of a special factor; instead, the party requesting an award of attorney fees must present competent and substantial evidence to support the claim.' " *Sanders*, 341 S.W.3d at 768 (citation omitted).

The phrase "such as the limited availability of qualified attorneys for the proceedings involved" has been construed by this court to require something more than evidence that there are a limited number of attorneys willing to accept a case *at the statutorily prescribed fee.* In *Sprenger v. Mo. Dept. of Public Safety,* 340 S.W.3d 109, 112 (Mo.App. W.D.2010), this court held that evidence that the prevailing hourly rate for competent attorneys is higher that the statutory rate specified in section 536.085 was insufficient to support the finding of a special factor. We thus expressed our disagreement with Eastern District decisions which have found that "[t]he limited availability of qualified attorneys in the area *who are willing to take a case at the $75.00 hourly rate* is a 'special factor' that can justify an enhancement above the statutory cap." *Id.* (quoting and refusing to follow *Hutchings v. Roling,* 193 S.W.3d 334, 350 (Mo.App. E.D.2006) (emphasis added)); *see also McMahan,* 980 S.W.2d at 127. To hold otherwise, we observed, "would eviscerate the statutory cap, as all proceedings would present the 'special factor[.]' " *Id.*

Baker's attorney testified that "if we were only to charge $75 per hour, I absolutely would not have taken the case on [Baker's] behalf. We wouldn't have even broken even doing it that way." In accordance with *Sprenger,* this evidence was not competent to support a finding that a special factor warranted awarding a higher hourly fee.[4]

---

4. As we noted in *Sprenger,* we empathize with Baker and her attorney. 340 S.W.3d at 112 n. 2. Section 536.085 has not been amended to adjust the cap on the hourly rate which can be awarded for over two decades. *Id.* This undermines the effectiveness of section

On the face of the judgment, it does not appear, however, that the circuit court relied on this evidence to find that a special factor existed.[5] The judgment states:

[Baker] has requested $21,983.01 for her fees and expenses incurred in this matter. This represents 108.55 hours for attorney Jonathan McQuilkin at $150.00 per hour ($16,282.50), 46 hours for law clerk services through attorney McQuilkin's office at $50 per hour ($2,300.00), and $3,400.51 in expenses. Eng & Woods/Jonathan McQuilkin also represented [Baker] on criminal charges arising from this event. The fees for those criminal charges have not been included in the total fees set forth above. *[Baker] testified that she sought the services of two other attorneys prior to hiring Mr. McQuilkin and Eng & Woods law firm. The first attorney [Baker] consulted advised [Baker] that she would be unable to win her case. The second attorney advised [Baker] that she would not handle the case as it involved a crossover of administrative law and criminal defense as there were also criminal charges pending from this event.* The time spent by Mr. McQuilkin is reasonable in that this case was tried twice at the administrative level. The case was first remanded due to the loss of the record of the first hearing. The matter was then heard at the circuit court level, and later appealed to the Missouri Court of Appeals for the Western District of Missouri. The case was *factually complex* and it involved *multiple hearings at the administrative, circuit and appellate level.*

. . . .

[Baker] requests reimbursement of her attorney's fees at a rate of $150.00 per hour. This hourly rate exceeds the $75.00 per hour rate allowed under [section] 536.085(4); however, I find that the following special factors exist which justify a higher fee.

The evidence established, and this Court takes further judicial notice of, the limited availability of qualified attorneys for this type of proceedings [sic]. *[Baker's] case required an attorney with the ability to represent [Baker] at the administrative, circuit and appellate level. [Baker] was turned down by two attorneys* prior to hiring Mr. McQuilkin. I find that a special factor exists to allow the higher rate, and that the rate of $150.00 per hour charged by Mr. McQuilkin is reasonable under the circumstances.

(Emphasis added.)

The circuit court thus concluded that a section 536.085(4) "special factor" existed because: (1) two attorneys turned Baker down before her case was accepted; (2)

---

536.087 as a means to increase administrative agency accountability. *Dishman*, 14 S.W.3d at 716. We reiterate the hope expressed in *Sprenger* that the General Assembly will re-evaluate the fixed hourly rate cap set forth in section 536.085(4). 340 S.W.3d at 112 n. 2. *Cf.* the Federal Equal Access to Justice Act, 28 U.S.C. section 2412 (1982) (amended to increase its statutory attorney fee cap to $125 and to permit a cost-of-living adjustment).

5. Though the judgment does not indicate that the circuit court relied on evidence that few if any attorneys would have accepted represen-

tation of a case like Baker's for $75 per hour, we do note that throughout the transcript the circuit court frequently commented to the effect that "I don't know where you are going to get an attorney in the state that is going to want to do something like this for $75." As the judgment did not describe the dearth of attorneys willing to accept representation at the rate of $75 an hour as a special factor, we presume the circuit court came to appreciate prior to the entry of its judgment that such evidence is not competent to establish a special factor under section 536.085(4).

Baker's case was factually complex; and (3) Baker's case required an attorney to represent Baker at the administrative, circuit and appellate levels.

We defer to the circuit court's *factual* findings about the number of attorneys who turned Baker down, the factual complexity of her case, and the procedural levels at which her case was processed. Those factual findings are supported by competent and substantial evidence on the record as a whole, and are not challenged by DMH. Similarly, we defer to the trial court's recognized expertise on the subject of the "necessity, reasonableness, and the value of attorneys' fees," insofar as the trial court approved the hours billed by Baker's counsel. *See Major Saver Holdings, Inc. v. Education Funding Group, LLC,* 350 S.W.3d 498, 509 (Mo.App. W.D. 2011). However, we are duty bound to review the circuit court's *legal* conclusion that its uncontested factual findings are competent to constitute a "special factor" under section 536.085(4) *de novo. Sprenger,* 340 S.W.3d at 111; *Sanders,* 341 S.W.3d at 766.[6]

### (i) The rejection of Baker's case by other attorneys

■ The circuit court found that Baker was turned down by two attorneys before her case was accepted. The first attorney turned Baker down because the attorney did not believe Baker would prevail. That an attorney did not share Baker's optimism about the merits of her case has no bearing on whether there were limited qualified attorneys available to handle a case like Baker's. A second attorney rejected Baker's case not because he was incompetent to handle the administrative issues raised but because he did not feel competent to handle the *criminal* charges pending against her. Baker presented *no evidence* that the criminal charges or proceedings were so interwoven with the administrative case that simultaneous representation by a single lawyer was required.[7]

Although the circuit court's *factual* findings that two attorneys refused to represent Baker for the reasons stated are supported by competent and substantial evidence on the record as a whole, the

---

6. The dissent suggests that the majority disregards the trial court's expertise in setting an award of attorney's fees. That expertise is not disregarded by the majority opinion. The majority opinion does recognize that the trial court's expertise in determining a "reasonable" award of attorney's fees is constrained by statute when the award of fees is made pursuant to section 536.085(4). Of the numerous cases cited by the dissent on the subject of our deference to the trial court's award of fees, none address or suggest that a trial court's "expertise" trumps legislative intent. We are bound, notwithstanding our displeasure with the restraint of section 536.085(4) to determine, *de novo,* whether the evidence in this case supported a "special factor" finding consistent with legislative intent, not trial court expertise.

7. We can envision a scenario where competent and substantial evidence could establish that representation of a defendant in an

agency matter necessitates simultaneous representation by the same attorney in a related criminal matter. For example, evidence could establish: sensitivity to Fifth Amendment issues should the client testify in civil proceedings (including the adverse inference if they don't); concerns that civil discovery devices will be used to obtain evidence for use in the criminal proceedings; the need to coordinate a stay in the civil proceeding pending disposition of the criminal matter; or the need to consider coordination of multiple governmental agencies to attempt to negotiate a "global" resolution of the criminal and civil matters. With such evidence, a special factor finding might be supported. However, beyond bare reference to the fact that Baker required both administrative and criminal representation, no evidence was presented in this case to establish the need to locate a single attorney who could handle both substantive obligations.

findings *are not legally sufficient* to constitute a special factor under section 536.085(4). Plainly, the findings do not correlate to whether there were limited qualified attorneys available to handle Baker's *administrative* case. The attorneys who refused Baker's representation did not do so because they felt they were unqualified to handle her administrative case. On this record, the fact that Baker's representation was refused by two attorneys is not a special factor as a matter of law.

**(ii) The factual complexity of Baker's case**

 The circuit court found that Baker's case was "factually complex." However, there was *no* evidence suggesting Baker's case was distinctively complex as compared to other administrative agency matters. On cross-examination, Baker's counsel admitted that the majority of the facts in Baker's case were not in contest and that the emphasis of Baker's defense was to show that Baker's uncontested conduct "did not meet the definition of physical abuse." Baker presented no evidence suggesting this was a peculiarly complex issue needful of special legal expertise. In fact, though Baker's attorney testified that he had "administrative law" experience, he acknowledged this was his first case addressing abuse and neglect by DMH, the antithesis of an attorney possessing specialized expertise or knowledge peculiarly necessary to defend Baker. *Cf.*

*Gasconade Cnty. Counseling Servs., Inc. v. Mo. Dept. of Mental Health,* 360 S.W.3d 831, 833 (Mo.App. E.D.2011) (finding a special factor due to evidence that "the services performed ... were highly specialized—it was a challenge to an administrative agency's statutory interpretation that had significant implications for similarly situated entities across the state.").[8]

More to the point, Baker presented no evidence suggesting that the "factual complexity" of her case limited the availability of qualified lawyers to handle Baker's case. There was no evidence that a single lawyer refused Baker's representation based on the complexity of her case. In fact, Baker's counsel admitted in addressing the availability of other counsel who could capably have handled Baker's administrative trial that "[t]here are a lot of competent attorneys in this area."

The circuit court's factual finding that Baker's case was "factually complex" would apply broadly to almost any administrative proceeding or civil action by or against the state. If "factual complexity" alone sufficed, as a matter of law, to constitute a special factor under section 536.085(4), the statutory cap would be eviscerated, "as all proceedings would present the 'special factor[.]'" *Sprenger,* 340 S.W.3d at 112. We conclude that "factual complexity" alone, without credible evidence of a concomitant effect of limiting the number of qualified attorneys available

**8.** In affirming the finding of a "special factor," the Eastern District in *Gasconade* also relied on evidence that the claimant attempted to retain four attorneys before securing representation (two who did not feel competent, one whose hourly fee greatly exceeded the statutory maximum, and one who asserted a conflict of interest), and on evidence that no attorney would be willing to take this type of case for $75 per hour. 360 S.W.3d at 833–34. Evidence that the prevailing market rate exceeds the statutory cap is not, as we discuss herein, a permissible basis for finding a "special factor." *Sprenger,* 340 S.W.3d at 112. And as we discuss herein, evidence that attorneys have refused to accept a claimant's case is not sufficient, standing alone, to determining whether there are a limited number of *qualified* attorneys available unless the reason for refusing the case involves substantive qualifications required by the case.

to handle a matter, is not a special factor as a matter of law.

Thus, although the circuit court's **factual** finding that Baker's case was "factually complex" may have been supported by the record as a whole, on this record, the finding is **not legally sufficient** to constitute a special factor under section 536.085(4).

### (iii) That an attorney was required to represent Baker at the administrative, circuit and appellate level

■ The circuit court found that Baker's case required an attorney with the ability to represent Baker at the administrative, circuit and appellate level. This factual finding states the obvious, as **every** case initiated under the Administrative Procedure Act can be expected to require representation of a client's interests at the administrative, circuit and appellate level. Read literally, if this factual finding represents a "special factor" as a matter of law, the statutory cap would be eviscerated "as all proceedings would present the 'special factor[.]'" *Sprenger*, 340 S.W.3d at 112.

Baker **conceded at oral argument** that the mere fact an agency proceeding or civil action brought by or against the state will require representation at the agency, circuit and appellate levels is **legally insufficient** to establish a special factor under section 536.085(4). Baker argues, however, that the circuit court's broad finding should be read narrowly to entitle Baker to a special factor finding with respect to Baker's counsel's appellate representation because appellate practice has become increasingly specialized. It is a stretch to read the circuit court's factual finding in this manner. Nothing in the judgment remotely hints at a finding by the circuit court that the appellate practice required in this case was highly specialized.

Even assuming, *arguendo*, that the circuit court's judgment could be interpreted to have made such a finding, (which it cannot), we are not persuaded **on this record** that Baker met her burden to demonstrate that the appellate representation required in her case constitutes a "special factor."

On this subject, Baker's counsel testified as follows:

In regard to our hourly rate of $150 per hour, that rate is justified by the special factors of this case. Those special factors are basically that there is—it is difficult to find attorneys who will represent individuals in cases such as this. This is a—it is a difficult area. It has basically required ... doing an evidentiary hearing before the administrative body, appealing through this Court, going back and doing a second hearing. **And then especially when we get to the point where it is going up to the Court of Appeals, it is very difficult to find an attorney that will do appellate work. We do our own appeals in my office.**

I am familiar, though that **a lot of other attorneys may handle the underlying matter, but that they refer it out to a different attorney when it gets to the point of going up through the Court of Appeals because not all attorneys are—just practice in that area, are able to handle that issue.**

**Because this was going to require both trials and ultimately appellate work, that higher rate is justified** due to the complexity of the issues, due to the lack of attorneys in the area.

(Emphasis added.) On cross-examination, Baker's counsel was asked:

Q: [By counsel for DMH] Do you think to argue [that Baker's conduct did not meet the definition of physical abuse] takes specialized knowledge, like patent

law for instance, other than general competence?

A: [By Baker's counsel] It—I think going in and doing trial work and especially when it got up to the appellate level, I mean, really *you almost have to split those two areas in half in regards to what the specialized knowledge is.*

(Emphasis added.) Baker's counsel went on to testify, in discussing qualified attorneys available to handle Baker's *trial before the administrative agency* that he "would never claim that [he is the only attorney in mid Missouri that could have represented Baker competently]. There are a lot of competent attorneys in this area."

This was the extent of Baker's evidence on the subject of specialized skills required for Baker's representation. From this evidence, it appears Baker was urging *either* a higher fee for the entirety of Baker's representation because one attorney was able to handle both Baker's trial and her appeals, *or* alternatively, a higher fee for Baker's appellate representation because of the specialized nature of appellate practice. Baker's counsel confirmed that this is Baker's position during oral argument.[9]

### (a) That a single attorney could handle both Baker's trial and appeals

Baker first argues that if an attorney is qualified and willing to handle both the trial and all appeals in an agency proceeding or civil matter brought by or against the state, the client should be entitled to a "special factor" finding because not every

lawyer is capable of handling, or willing to handle, both trial and appeals. Baker concedes that the administrative trial of Baker's case did not require a highly specialized lawyer.[10] And, as we discuss in greater detail, *infra*, Baker's counsel concedes that he is not a highly specialized appellate lawyer. Baker simply argues that because fewer lawyers are willing to handle both trial and resultant appeals, a special factor finding is warranted if a lawyer is willing to handle both trial and resultant appeals. But, as we observed, *supra*, Baker **conceded at oral argument** that the mere fact an agency proceeding or civil action brought by or against the state will require representation at the agency, circuit and appellate levels is *legally insufficient* to establish a special factor under section 536.085(4).

Baker's counsel did offer his general opinion that more and more attorneys refer out appellate representation in cases they have tried. However, Baker presented no evidence that there were limited attorneys available and willing to handle *her* trial and appeals. The two attorneys who refused Baker's representation did not do so because they were unwilling to handle both her trial and any appeals. Moreover, Baker presented no evidence suggesting that it was essential to her representation that trial counsel and appellate counsel be one and the same. And Baker presented no evidence that she would have been restricted in her ability to secure separate appellate counsel had that been required.

---

9. The Court commends Mr. McQuilkin for his candor. Mr. McQuilkin freely acknowledged during oral argument, as we believe he did in his testimony before the circuit court, that the trial proceedings before the agency in Baker's case did not necessarily require counsel with highly specialized knowledge or experience. Mr. McQuilkin reiterated to this Court during

oral argument that it has always been Baker's position that his ability to handle **both** the trial and all appeals warrants a special factor finding for all of his fees, or in the alternative, a special factor finding limited to his appellate representation of Baker's interests.

10. *See* footnote 8.

Though we understand a client may prefer to have a single lawyer willing to handle both her trial and any appeals necessitated by an agency proceeding, client convenience or preference does not translate into a legal conclusion that there are a "limited number of qualified attorneys *for the proceedings involved*," whether those proceedings be trial, appellate, or both. *Sprenger*, 340 S.W.3d at 113.

■■■ On this record, we cannot conclude that the Baker's counsel's willingness to represent Baker's interests at trial and through any appeals supports the legal conclusion that a special factor existed warranting award of a higher hourly fee.

### (b) That appellate representation is specialized

Baker alternatively argues that she is at least entitled to a special factor finding for the fees associated with her appellate representation given the trend toward appellate practice specialization.

In *Sprenger*, we addressed the difference between highly specialized lawyerly skills and general lawyerly ability:

'[T]he exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys ... having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. ***Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.*** Where such qualifica-

tions are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limited is allowed.'

340 S.W.3d at 113 (quoting *Pierce v. Underwood*, 487 U.S. 552, 571–72, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (addressing the Federal Equal Access to Justice Act, 28 U.S.C. section 2412 (1982) (emphasis added))).

Baker argues that "appellate work" is a specialized area of the law, on a par with the non-exclusive list of examples to which this court referenced in *Sprenger*. However, Baker offered no evidence about the nature of the appellate work required in her case that elevated the work beyond "general lawyerly skills," or that differentiated the appellate work from other practice areas where "general lawyerly skills" can be expected.[11] Baker offered no evidence that there were a limited number of qualified attorneys available or willing to handle Baker's appeal. Baker offered no evidence to explain why the appellate work in Baker's case required distinctive knowledge or specialized skill needful for the litigation in question, a particularly significant omission in light of Baker's concession that her administrative trial did not. In fact, Baker's counsel conceded at oral argument that he does not consider himself highly specialized in appellate work, contravening the supposition that the appellate work required in this case was so highly specialized as to warrant a special factor finding. Importantly, the circuit court did not find that the appellate work required in this case was highly special-

---

11. The dissent inaccurately suggests that the majority opinion holds that appellate practice can never be considered highly specialized as to permit a special factor finding. The majority opinion does not so hold. The majority holds merely that in this case, on this record, *no evidence* supports the conclusion that the appellate practice in Baker's case required "highly specialized" knowledge or expertise as to limit the number of qualified attorneys available to handle Baker's matter.

ized.[12]

Baker's counsel did generally opine without specific reference to the facts and circumstances in Baker's case that "it is difficult to find an attorney that will do appellate work," and that it is often necessary to refer a case out once it gets to the level of an appeal because "not all attorneys are ... able to handle that issue." Even were we to accept these opinions as fact, we would not conclude that Baker met her burden to establish a *special* factor on this record. To do so would be to conclude that a special factor finding will be required in every case where appellate representation of the prevailing party was required. As we have now oft repeated, to so hold would "eviscerate the statutory cap, as all [appellate] proceedings would present the 'special factor[.]'" *Sprenger,* 340 S.W.3d at 112.

We conclude, therefore, that although the circuit court's *factual* finding that an attorney was required to represent Baker at the administrative, circuit and appellate level was self-evident and supported by the record as a whole, on this record, the finding is *not legally sufficient* to constitute a special factor under section 536.085(4).

In summary, on this record, Baker did not meet her burden to establish a special factor pursuant to section 536.085(4). The circuit court erred in awarding attorney fees at the hourly rate of $150 per hour rather than the statutorily prescribed rate of $75 per hour. Point II is granted, and this matter is remanded for recalculation of the award to Baker of fees and expenses.[13]

## Motion for Attorney's Fees on Appeal

 During the pendency of this appeal, Baker filed two supplemental applications for attorney's fees and expenses, requesting an award for the fees and expenses she has incurred in connection with this appeal. DMH acknowledges that a "fee applicant is ... entitled to reasonable fees and expenses incurred in defending the fee award on appeal." [14] *McMahan,* 980 S.W.2d at 126 (citing *State ex rel. Division of Transportation v. Sure–Way Transportation, Inc.* 948 S.W.2d 651, 658 (Mo.App. W.D.1997)); *see also Hutchings,* 193 S.W.3d at 353.

"[T]he trial court is better equipped to hear evidence and argument on [the issue of attorney's fees incurred on appeal]." *Hutchings,* 193 S.W.3d at 353 (citing *Rosehill Gardens, Inc. v. Luttrell,* 67 S.W.3d 641, 643 (Mo.App. W.D.2002)). We remand consideration of Baker's applications to the circuit court to permit it to deter-

**12.** Tellingly, the circuit court did not limit its award of an increased hourly rate to the hours spent handling Baker's appeals.

**13.** The circuit court's award of fees and expenses in the amount of $21,683.01 included expenses and hourly fees to professional personnel other than Baker's attorney(s). None of those fees or expenses are challenged by DMH or implicated by this Opinion. The only portion of the award that will require recalculation on remand is the award for attorney fees at the hourly rate of $150.

**14.** In *Hernandez v. State Board of Registration for the Healing Arts,* 936 S.W.2d 894 (Mo.App. W.D.1997), this court addressed as a matter of first impression whether section 536.087 permitted the recovery of attorney's fees incurred in seeking attorney's fees for an underlying civil action or agency proceeding. This court concluded that "[r]efusing to award attorney's fees for the time spent in obtaining attorney's fees for the underlying proceeding or civil action would thwart the purpose of ... section 536.087." *Id.* at 902. Thus, "[s]ection 536.087 ... provides compensation to a prevailing party ... for all aspects of [ ] litigation with the state, including fees and expenses incurred in seeking fees, if the state's position in the action was not substantially justified." *Id.*

mine and award Baker's reasonable fees and expenses incurred in connection with this appeal.

## Conclusion

The circuit court's judgment is affirmed in every respect except the amount of the award is reversed. This matter is remanded. On remand, the circuit court shall recalculate the award for Baker's attorney fees using an hourly rate of $75. The circuit court shall also determine Baker's reasonable fees and expenses incurred in connection with this appeal, and add that sum to its award.

ELLIS, Presiding Judge, dissents in separate opinion.

HARDWICK, Judge, joins in the majority opinion.

JOSEPH M. ELLIS, Judge.

I concur in the majority opinion's denial of Appellant's Point I on appeal, and I likewise concur in the majority's recognition that Baker is entitled to an award of attorney's fees incurred on appeal and its remand to permit the trial court to make such an award. I respectfully dissent, however, from the majority's reversal of the trial court's finding of a special factor under § 536.085(4), and its award of fees at an hourly rate of $150 per hour. I do so for two reasons. First, the majority opinion places an undue burden on the party seeking attorney's fees by wholly disregarding the recognized expertise of the trial court on the subject of attorney's fees. Secondly, the majority fails to recognize the evolution of appellate practice into a largely specialized area of legal work that may, in and of itself, constitute a special factor.

Section 536.085(4) provides that "attorney fees shall not be awarded in excess of seventy-five dollars per hour unless the court determines that a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." The language of the statute simply requires a determination by the trial court that a special factor exists. In support of such a finding, the statute does not require evidence beyond the expertise of the trial court on the subject. In the case at bar, the circuit court expressly took "judicial notice of ... the limited availability of qualified attorneys for this type of proceedings [sic]" and determined that this special factor justified a higher fee. This determination was sufficient to satisfy the requirements of the statute.

Certainly, the trial court's award is still subject to review. Section 536.087.7 provides that this Court "may modify, reverse or reverse and remand the determination *of fees and other expenses if the court finds that the award ... or the calculation of the amount of the award, was arbitrary and capricious, was unreasonable, was unsupported by competent and substantial evidence, or was made contrary to law or in excess of the court's or agency's jurisdiction.*" In reviewing the award of attorney's fees, "[w]hile questions of law are subject to *de novo* review, we defer to the [court]'s fact-finding and credibility determinations." *Sprenger v. Missouri Dep't of Pub. Safety*, 340 S.W.3d 109, 111 (Mo.App. W.D.2010).

In this case, at the evidentiary hearing, Respondent's counsel took the stand as a witness under oath. Among other things, he testified, "It is difficult to find attorneys who will represent individuals in cases such as this. This is a difficult area." Counsel further testified that it is very difficult to find an attorney that will do appellate work because not all attorneys "are able to handle that issue." Counsel was certainly qualified to testify as to his expert opinion on the subject of attorney's

fees. *See Klinkerfuss v. Cronin*, 199 S.W.3d 831, 840 (Mo.App. E.D.2006) (noting that counsel's testimony was properly allowed though the trial court, as a expert on the subject itself, was not bound by any expert testimony on the issue of attorney's fees). We must defer to the trial court's credibility determination related to that testimony and the weight afforded thereto.[1] *Sprenger*, 340 S.W.3d at 111.

The trial court found that "[t]he evidence established, and this Court takes further judicial notice of, the limited availability of qualified attorneys for this type of proceedings [sic]." This was a factual finding by the trial court to which we must defer. "[T]he trial court is deemed to be an expert on the necessity, reasonableness, and the value of attorneys' fees." *Major Saver Holdings, Inc. v. Education Funding Group, LLC*, 350 S.W.3d 498, 509 (Mo. App. W.D.2011) (emphasis omitted); *see also Alhalabi v. Missouri Dep't of Natural Resources*, 300 S.W.3d 518, 530 (Mo.App. E.D.2009). "In the absence of contrary evidence, the trial court is presumed to know the character of the services rendered in duration, zeal and ability, and to know the value of them according to custom, place, and circumstance." *McCoy*, 366 S.W.3d at 596 (internal quotation omitted); *see also Essex Contracting, Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 656 (Mo. banc 2009).

Appellant contends in its point relied on that the trial court's award of attorney's fees was "unsupported by competent and substantial evidence in that the record is devoid of any evidence that the issues involved were so complex that specialized knowledge above general lawyerly competence was required or that Ms. Baker's attorney was the only attorney in the area with the experience, knowledge, and ability to handle the underlying action." In finding this point meritorious and concluding that the trial court's factual finding that there was limited availability of qualified attorneys for this type of proceeding was not supported by the record, the majority wholly disregards our standard of review and completely fails to recognize, let alone provide any rationale for disregarding, the abundance of case law establishing that the trial court is an expert in the area of attorney's fees and that the trial court may award attorney's fees even without the aid of any evidence.[2] *See Western Blue Print*

---

1. The majority opinion classifies this sworn testimony as opinion "without specific reference to the facts and circumstances in Baker's case" and as "vague and non-specific testimony." The majority concludes, without citation to authority, that counsel's testimony "cannot be deemed to support a special factor finding." In making these assessments, the majority is doing nothing more than improperly re-weighing the evidence. *Robbins v. Webco, Inc.*, 369 S.W.3d 787, 789 (Mo.App. S.D.2012) ("We cannot reweigh evidence or disregard findings supported by the record.").

2. The majority appears to disregard the expertise of the trial court, and the presumptive evidentiary value thereof, by relying on a statement in *Sanders v. Hatcher*, 341 S.W.3d 762, 768 (Mo.App. W.D.2011), that "the party requesting an award of attorney fees must present competent and substantial evidence to support the claim" that a special factor exists. *Sanders* quoted *Washington v. Jones*, 154 S.W.3d 346, 352 (Mo.App. E.D.2004), for that statement; however, the case cited by *Washington* in support of that proposition, *Smith v. White*, 114 S.W.3d 407, 420 (Mo.App. W.D. 2003), does not support the conclusion that the trial court's expertise should not be considered in determining whether an award of attorney's fees in an agency proceeding is supported by the record; in fact, it does not involve § 536.085(4) in any way. *Smith* held that the record in that case, where attorney's fees were awarded based upon a provision in the parties' marital dissolution settlement agreement related to attorney's fees in the event of a breach of that agreement, was insufficient to determine which attorney's fees were incurred dealing with the contempt claims and which fees related to other issues like the modification of child support. 114

*Co. v. Roberts,* 367 S.W.3d 7, 23 (Mo. banc 2012) ("The circuit court is deemed an expert at fashioning an award of attorneys' fees and may do so at its discretion. The circuit court that tries a case and is acquainted with all the issues involved may fix the amount of attorneys' fees without the aid of evidence.") (internal quotation and citation omitted); *McCoy,* 366 S.W.3d at 602 ("The trial court sits as an expert in consideration of attorney fees due after consideration of all relevant factors. We have no basis for upsetting the trial court's determination here. We will not reverse an award unless the award is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration.") (Internal quotations and citations omitted); *In re Marriage of Gardner,* 320 S.W.3d 230, 235 (Mo.App. E.D.2010) ("[C]ourts are considered experts on the question of attorney's fees, and the judge who tries a case and is acquainted with the issues can fix the amount of attorney's fees without the aid of evidence."); *LPP Mortgage, Ltd. v. Marcin, Inc.,* 224 S.W.3d 50, 56 (Mo.App. W.D.2008) ("Since trial courts are considered to be experts on the issue of attorney fees, no evidence is necessary to support an award thereof."); *Davis v. Schmidt,* 210 S.W.3d 494, 513 (Mo.App. W.D.2007) ("[T]he trial judge is an expert on the subject of attorneys' fees and may award fees even though no evidence of reasonableness is introduced."); *Bacon v. Uhl,* 173 S.W.3d 390, 399 (Mo.App. S.D. 2005) ("A trial court is an expert on the

reasonableness of attorney's fees. Accordingly, a judge may award fees even though no evidence of reasonableness is introduced.") (internal quotation and citation omitted).[3] In other words, the case law establishes that the trial court's expert knowledge and opinion alone is sufficient to support an award of attorney's fees.

The record in the case at bar clearly reflects that the trial court relied upon its expertise in making its finding that a special factor exists. During the hearing on attorney's fees, in denying Appellant's motion for denial of attorney's fees based upon Respondent's alleged failure to present sufficient evidence to support such an award, the trial court expressly noted its recognized expertise on the subject of attorney's fees and its ability to rely upon that expertise as support for such an award. Furthermore, in its judgment, the trial court took "judicial notice," based upon its experience and expertise, of the limited availability of qualified attorneys for this type of proceeding. In this regard, I would be remiss if I failed to note that the trial judge in this case has been on the bench in central Missouri for many years and is no doubt familiar with a large number of practitioners in the area, has observed their skills, and is capable of identifying those attorneys competent to handle this type of case and any appeals involved therewith.

When the expertise of the trial court is properly considered, along with the testi-

---

S.W.3d at 420. This Court reversed the award and remanded for the development of a record as to what portion of the attorney's work was attributable to the breach of the settlement agreement. *Id. Smith* simply does not support the conclusion that the expertise of the trial court should be disregarded, and a special evidentiary burden different from other cases involving awards of attorney's fees thereby established, in cases involving § 536.085(4). To the extent that *Washington* and/or *Hatcher* could be viewed as imposing

such a requirement based upon their failure to acknowledge the trial court's expertise in their sufficiency of the evidence analysis, they provide no rationale for creating such a requirement and should not be followed.

**3.** The trial court's recognized expertise extends to fees for legal services provided on appeal. *Klinkerfuss v. Cronin,* 289 S.W.3d 607, 613 (Mo.App. E.D.2009).

mony of counsel, the record is clearly sufficient to support the trial court's award. The majority may disagree with the trial court's decision, but our standard of review provides no legitimate basis for this Court to substitute its judgment for that of the trial court.[4] *McCoy*, 366 S.W.3d at 601 ("[W]e know of no authority that would justify an attempt by this court, as a reviewing court, to substitute our judgment for that of the trial court.") Accordingly, I would deny Appellant's Point II[5] and affirm the trial court's award of attorney's fees.

As to my second objection to the majority opinion, I am compelled to note my disagreement with the apparent position taken by the majority that appellate practice is not an area of legal specialization that the trial court could rely upon in finding a special factor. As the trial court presumably did, this Court may take judicial notice of the fact that the number of attorneys that handle appeals for the cases they try at the circuit court or administrative level has dramatically dropped off over the years and that cases on appeal are increasingly being referred to attorneys specializing in the area of appellate work. Indeed, this Court increasingly sees very talented, experienced and successful trial lawyers turning over the appellate work in cases they tried to appellate specialists. In other words, it is not just lawyers with little trial or appellate experience referring cases to appellate specialists; it is just as often, if not more so, the successful trial lawyer who wants to be successful on appeal as well.

While it certainly was not always the case, appellate practice has, over the years, evolved into a specialty in the legal field. This is further borne out by the fact that a number of states have specialty certification programs recognizing appellate practice as a legal specialty. Among the more notable, the Florida Bar, Board of Legal Specialization and Education; the Texas Board of Legal Specialization; the State Bar of California—Department of Legal Specialization; and the New Mexico Board of Legal Specialization. American Bar Association, *Sources of Certification*, (May 15, 2013), http://www.americanbar.org/groups/professional_responsibility/committees_commissions/specialization/resources/resources_for_lawyers/sources_of_certification.html.

While not every appeal may require such a specialist, a trial court familiar with the case could certainly find, under the circumstances of a particular case, that a specialist in appellate work was necessary and that this constituted a special factor warranting a rate above the $75.00 per hour for the appellate work. As noted *supra*, in the case at bar, counsel testified

---

4. The majority inexplicably argues in footnote # 6 that that recognition of the evidentiary value of the trial court's expertise and the judicial notice it took in making its factual finding that there was a "limited availability of qualified attorneys for this type of proceedings [sic]" is somehow contrary to the legislative intent. The legislature expressly intended for the trial court to be able to award attorney's fees in excess of $75.00 per hour where the trial court finds that there was a "limited availability of qualified attorneys for the proceedings involved" or that some other special factor is present. § 536.085(4). The majority fails to explain, and I am unable to perceive, how recognizing the evidentiary value of the trial court's own expert knowledge and the judicial notice taken by the court in support of such a factual finding serves to defeat the legislative intent of the statute.

5. As noted *supra*, § 536.087 also permits this Court to reverse the decision on fees if the award was arbitrary and capricious, or unreasonable, but Appellant asserts no challenge to the trial court's award on that basis, and therefore, we need not and should not address the issue.

that it was difficult to find an attorney able to handle appellate work. The trial court could rely on that testimony, its own expertise, and it analysis of the nature of the case in finding that the appellate work involved in this case required a specialist in appellate work. Such a finding is, therefore, supported by the record in this case. While the majority may disagree with the finding, it is not free to substitute its judgment for that of the trial court. *State v. Breedlove*, 348 S.W.3d 810, 815 (Mo.App. S.D.2011) ("We may not substitute our judgment for that of the trial court and may not reverse even if we believe we would have weighed the evidence differently."); *McCoy*, 366 S.W.3d at 601 ("While judges could easily differ on the determination of the reasonable value of the services provided by HLF, we know of no authority that would justify an attempt by this court, as a reviewing court, to substitute our judgment for that of the trial court. The trial judge who heard the evidence first-hand is the judge best equipped to exercise the judgment and discretion called for . . . .").

For this reason, even if I were to agree with the majority that the trial court erred in finding a special factor with regard to the legal work before the administrative agency (which I expressly do not as set out *supra* ), I would nevertheless find that the trial court did not err with regard to the special factor finding regarding the appellate work involved in the case.

For the foregoing reasons, I would affirm the trial court's judgment in all respects.